1

PETER R. DION-KINDEM (SBN 95267)
THE DION-KINDEM LAW FIRM
PETER R. DION-KINDEM, P. C.

2

3

21550 Oxnard Street, Suite 900
Woodland Hills, California 91367
Telephone:    (818) 883-4900
Fax:          (818) 883-4902
Email:        peter@dion-kindemlaw.com

4

5

6

LONNIE C. BLANCHARD, III (SBN 93530)
THE BLANCHARD LAW GROUP, APC
3311 East Pico Boulevard
Los Angeles, CA 90023
Telephone:    (213) 599-8255
Fax:          (213) 402-3949
Email:        lonnieblanchard@gmail.com

7

8

9

10

11

Attorneys for Plaintiff Jose Gonzalez

12

UNITED STATES DISTRICT COURT

13

EASTERN DISTRICT OF CALIFORNIA

14

15

16

Jose Gonzalez, an individual, on behalf of himself
and all others similarly situated,

17

Plaintiff,

18

vs.

19

20

CoreCivic of Tennessee, LLC (formerly CCA of
Tennessee, LLC), and Does 1 through 10,
inclusive,

21

Defendants.

**Case No. 1:16-cv-01891-DAD-JLT**
*(Assigned to the Hon. Dale A. Drozd)*

**Memorandum of Points and Authorities in
Support of Unopposed Motion for
Preliminary Approval of Class/PAGA Action
Settlement**

**Date:**      **May 15, 2018**
**Time:**      **9:30 AM**
**Ctrm:**      **5**

22

23

24

25

26

27

28

**Memorandum in Support of Unopposed Motion for Preliminary Approval**

# TABLE OF CONTENTS

I.     Introduction ................................................................................................................. 1

II.    Standards for preliminary approval ............................................................................ 1

III.   The proposed Settlement satisfies the standards for preliminary approval. ................... 4

       A.    The Class/PAGA Action claims ..................................................................... 4

       B.    The course of proceedings and settlement negotiations ................................. 4

       C.    The material provisions of the settlement agreement ..................................... 5

             1.    The Settlement Class Period ............................................................... 5

             2.    The Settlement Class ............................................................................ 5

             3.    The Settlement Subclasses ................................................................... 5

             4.    The Class benefits ................................................................................ 5

                   a)    Gross settlement to Class Members ........................................ 5

                   b)    Net Settlement to Class Members ........................................... 6

                         (1)    Administration Costs ................................................... 6

                         (2)    Attorneys' fees ............................................................ 6

                         (3)    Attorneys' costs .......................................................... 6

                         (4)    PAGA payment ........................................................... 6

                         (5)    Incentive Awards ........................................................ 7

                   c)    Allocation of Net Settlement Fund .......................................... 7

             5.    Class Notice ......................................................................................... 9

             6.    Release of Claims ............................................................................... 10

             7.    Notice to the LWDA ......................................................................... 10

IV.    Proposed Schedule .................................................................................................... 10

V.     The proposed settlement satisfies the requirements for class certification. ................. 10

       A.    The requirements of Fed.R.Civ.P. 23(a) are satisfied. ................................ 11

             1.    The numerosity required by Rule 23(a)(1) is satisfied. ..................... 11

             2.    The commonality requirement is satisfied. ........................................ 12

             3.    Typicality under Rule 23(a)(3) is present. ......................................... 13

             4.    Plaintiffs are adequate representatives. .............................................. 14

       B.    The requirements of Fed.R.Civ.P. 23(b)(3) are satisfied. ........................... 15

             1.    Common questions predominate because the class claims arise from a
                   common nucleus of fact and involve overriding common questions. ................. 16

             2.    A class action is the superior method of adjudication because individual

litigation is not feasible and the claims are manageable.........................................18

VI.  The settlement is appropriate for preliminary approval...........................................20

   A.  Procedural adequacy ...............................................................................20

   B.  Substantive adequacy ..............................................................................21

      1.  Adequacy of the Settlement Amount ................................................21

      2.  Attorney's fees .............................................................................23

      3.  Class Member's Released Claims.....................................................25

      4.  Class Representative Enhancement payments ....................................25

      5.  PAGA Penalty Claims ...................................................................26

      6.  Proposed Class Notice and Administration .......................................28

   C.  The proponents of the settlement are experienced.........................................28

   D.  Public policy considerations support preliminary approval...............................29

VII.  Conclusion. ........................................................................................29

1

## Table of Authorities

2

### Cases

3

*Allapattah Services, Inc. v. Exxon Corp.* (11th Cir. 2003) 333 F.3d 1248 .............................. 16

4

*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591 ........................................ 2, 11, 15, 16

*Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48............................... 12, 13, 14

5

*Bernhard v. TD Bank, N.A.* (D.N.J., Oct. 5, 2009, CIV.08-4392RBK/AMD) 2009 WL 3233541 ........... 3

6

*Bruno v. Quten Research Inst., LLC* (C.D. Cal. 2011) 280 F.R.D. 524 ............................ 12, 19

7

*Cervantez v. Celestica Corp.* (C.D. Cal. 2008) 253 F.R.D. 562 ..................................... 18

8

*Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566.......................... 28

*Collier v. Montgomery County Housing Authority* (E.D. Pa. 2000) 192 F.R.D. 176, 184 ...................... 3

9

*Comcast Corp. v. Behrend* (2013) 569 U.S. 27 ...................................................... 23

10

*Cotter v. Lyft, Inc.* (N.D. Cal. 2016) 193 F.Supp.3d 1030 ..................................... 26, 27

11

*Cox v. American Cast Iron Pipe Co.* (11th Cir. 1986) 784 F.2d 1546 ................................. 11

12

*Delagarza v. Tesoro Refining and Marketing Co.* (N.D. Cal., Sept. 8, 2011, No. C-09-5803 EMC) 2011 WL 4017967 ................................................................................ 17

13

*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326 .................... 19, 20

14

*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011) 657 F.3d 970 ..................................... 13

15

*Evon v. Law Offices of Sidney Mickell* (9th Cir. 2012) 688 F.3d 1015 ........................... 13, 15

16

*Fischel v. Equitable Life Assur. Society of U.S.* (9th Cir. 2002) 307 F.3d 997 ...................... 24

*Garcia v. Gordon Trucking, Inc.* (E.D. Cal., Oct. 31, 2012, No. 1:10-CV-0324 AWI SKO) 2012 WL 5364575........................................................................................... 26

17

*Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011 ....................................... 15, 21

18

*Hassine v. Jeffes* (3d Cir. 1988) 846 F.2d 169................................................... 14

19

*Hopson v. Hanesbrands Inc.* (N.D. Cal., Apr. 3, 2009, No. CV-08-0844 EDL) 2009 WL 928133......... 26

20

*Hoxworth v. Blinder, Robinson & Co., Inc.* (3d Cir. 1992) 980 F.2d 912............................. 15

21

*In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935 ...................... 21, 24

22

*In re Chambers Development Securities Litigation* (W.D. Pa. 1995) 912 F.Supp. 822 ............... 13, 15

23

*In re Community Bank of Northern Virginia* (3d Cir. 2005) 418 F.3d 277 ............................. 15

24

*In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768 .................................................................................... 2, 3, 15

25

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555........................................... 24

26

*In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454 ................... 21, 24

27

*In re MicroStrategy, Inc. Securities Litigation* (E.D. Va. 2001) 148 F.Supp.2d 654 ................. 29

28

*In re National Football League Players' Concussion Injury Litigation* (E.D. Pa. 2014) 961 F.Supp.2d 708.................................................................................................................................... 2, 3

*In re Online DVD-Rental Antitrust Litigation* (9th Cir. 2015) 779 F.3d 934 ........................................... 24

*In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373 ............................................ 24

*In re Phar-Mor, Inc. Securities Litigation* (W.D. Pa. 1994) 875 F.Supp. 277 ........................................ 13

*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283. 2

*In re Uber FCRA Litigation* (N.D. Cal., June 29, 2017, No. 14-CV-05200-EMC) 2017 WL 2806698 .. 27

*In re Vitamins Antitrust Litigation* (D.D.C. 2002) 209 F.R.D. 251 ....................................................... 16

*Laffitte v. Robert Half Intern. Inc.* (2016) 1 Cal.5th 480 ...................................................................... 25

*Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152 ................................................................................................................................. 20

*Lorber v. Beebe* (S.D.N.Y. 1975) 407 F.Supp. 279.............................................................................. 18

*Martinez v. Mecca Farms, Inc.* (S.D. Fla. 2002) 213 F.R.D. 601 ......................................................... 11

*Mazza v. American Honda Motor Co., Inc.* (9th Cir. 2012) 666 F.3d 581 ............................................. 12

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (3d Cir. 2001) 259 F.3d 154 ............................ 15

*Nordstrom Com'n Cases* (2010) 186 Cal.App.4th 576 ......................................................................... 26

*Ortega v. J.B. Hunt Transport, Inc.* (C.D. Cal. 2009) 258 F.R.D. 361................................................... 18

*Palacios v. Penny Newman Grain, Inc.* (E.D. Cal., July 6, 2015, No. 1:14-CV-01804-KJM) 2015 WL 4078135............................................................................................................................................ 21

*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797 .......................................................................... 20

*Pierce v. Rosetta Stone, Ltd.* (N.D. Cal., May 3, 2013, No. C 11-01283 SBA) 2013 WL 1878918........ 20

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson* (1968) 390 U.S. 414 ......................................................................................................................................... 21

*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948 ........................................................ 25

*Rolland v. Cellucci* (D. Mass. 2000) 191 F.R.D. 3 .............................................................................. 29

*Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (N.D. Cal. 2007).................... 24

*Safran v. United Steelworkers of America, AFL-CIO* (W.D. Pa. 1989) 132 F.R.D. 397 ........................ 13

*Schulz v. QualxServ, LLC* (S.D. Cal., Apr. 26, 2012, No. 09-CV-17-AJB MDD) 2012 WL 1439066.... 17

*Seidman v. American Mobile Systems, Inc.* (E.D. Pa. 1994) 157 F.R.D. 354......................................... 13

*Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416 ....................................................... 24

*Smith v. Professional Billing & Management Services, Inc.* (D.N.J., Nov. 21, 2007, 06-4453JEI) 2007 WL 4191749 ...................................................................................................................................... 3

*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938 ............................................................................... 6

*Stewart v. Rubin* (D.D.C. 1996) 948 F.Supp. 1077 ............................................................................. 29

*Syed v. M-I, L.L.C.* (E.D. Cal., Feb. 22, 2017, No. 112CV01718DADMJS) 2017 WL 714367 ............. 26

*Syed v. M-I, L.L.C.* (E.D. Cal., July 27, 2017, No. 112CV01718DADMJS) 2017 WL 3190341 ........... 24

*Viceral v. Mistras Group, Inc.* (N.D. Cal., Oct. 11, 2016, No. 15-CV-02198-EMC) 2016 WL 5907869 26

*Villegas v. J.P. Morgan Chase & Co.* (N.D. Cal., Nov. 21, 2012, No. CV 09-00261 SBA EMC) 2012 WL 5878390 .................................................................................................................................. 21

*Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935 ................................................. 19

*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043 .................................................................. 23

*Vu v. Fashion Institute of Design & Merchandising* (C.D. Cal., Mar. 22, 2016, No. CV 14-08822 SJO (EX)) 2016 WL 6211308 .......................................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338 .................................................................... 12, 23

*Weekes-Walker v. Macon County Greyhound Park, Inc.* (M.D. Ala. 2012) 281 F.R.D. 520 ................... 11

*Weinberger v. Kendrick* (2d Cir. 1982) 698 F.2d 61 ............................................................................. 3

*Wetzel v. Liberty Mut. Ins. Co.* (3d Cir. 1975) 508 F.2d 239 .............................................................. 15

*Zinberg v. Washington Bancorp, Inc.* (D.N.J. 1990) 138 F.R.D. 397 ................................................... 13

*Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1180 .............................................. 19

**Other Authorities**

4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.25, p. 38 ........ 1, 3

5 James Wm. Moore, Moore's Federal Practice ¶ 23.83[1] ...................................................................... 1

MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004) ............................................ 2

**Rules**

Fed. Rules Civ.Proc., rule 23                                                                         passim

1

## I.    INTRODUCTION

2          Unless otherwise set forth herein, this Memorandum incorporates by reference the definitions in

3    the Stipulation of Class/PAGA Settlement and Release ("Settlement"), a copy of which is attached as

4    Exhibit 1 to the Declaration of Peter R. Dion-Kindem filed herewith. The Settlement contains all of the

5    material terms of the settlement, including the manner and form of notice to be given to the Class

6    Members, the contingencies or conditions to the settlement's final approval, and other necessary and

7    proper terms.

8          Under the terms of the proposed Settlement, Defendant agrees to fund a total, non-reversionary,

9    Settlement Amount of $3,002,606.24 for the benefit of Settlement Class Members for their alleged

10    damages resulting from Defendant's alleged labor law violations. In addition, Defendant also agreed to

11    pay the employer's share of taxes associated with any payments to Settlement Class Members.

12          By this Stipulation, the Parties request that the Court take the first step in the approval process --

13    preliminary approval of class action settlement.

14          In determining whether preliminary approval is warranted, the issue before the Court is whether

15    the settlement is within the range of what might be found fair, reasonable and adequate, so that notice of

16    the settlement may be given to Settlement Class Members and a hearing scheduled to consider final

17    settlement approval. The Court is not required at this point to make a final determination as to the

18    fairness of the settlement. (*See* 5 James Wm. Moore, Moore's Federal Practice ¶ 23.83[1], at 23-336.2 to

19    23-339 (3d ed. 2002).)

20          Since the settlement meets the criteria for preliminary approval and is well within the range of

21    what might be approved as fair, reasonable and adequate, the Parties request that the Court preliminarily

22    approve the Settlement.

23    ## II.    STANDARDS FOR PRELIMINARY APPROVAL

24          When a proposed class-wide settlement is reached, it must be submitted to the Court for

25    approval. (4 H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 11.25, p.

26    38.) Preliminary approval is the first of three steps. The second step is the dissemination of notice of the

27

28

settlement to all Class members. The third step is a settlement approval or final fairness hearing. (*See* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.632 (2004).)

The legal standard to be applied to determine whether to preliminarily approve a class settlement is two-fold. First, the Court must determine whether a settlement class may be conditionally certified for settlement purposes. (*See Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 620 [117 S.Ct. 2231, 2248, 138 L.Ed.2d 689] (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).) While a settlement class must satisfy each of the requirements of Rule 23(a) and 23(b)(3), "the fact of settlement is relevant to a determination of whether the proposed Class meets the requirement imposed by the Rule." (*In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions* (3d Cir. 1998) 148 F.3d 283, 308–309.) In this context, some courts make only a preliminary determination that the proposed claims satisfy the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). (MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632.)

Second, the Court must examine the proposed settlement to determine whether it appears fair and reasonable. (MANUAL FOR COMPLEX LITIGATION (FOURTH), §21.632.) In *In re National Football League Players' Concussion Injury Litigation* (E.D. Pa. 2014) 961 F.Supp.2d 708, the Court explained this inquiry as follows:

> At the preliminary approval stage, the bar to meet the "fair, reasonable and adequate" standard is lowered, and the court is required to determine whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."

To determine whether a settlement "falls within the range of possible approval," a court must "consider plaintiffs' expected recovery balanced against the value of the settlement offer." (*Id.*) As the Court explained in *In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, an initial presumption of fairness is established when the court finds that: (1) the parties' negotiations occurred at arm's length; (2) there was sufficient discovery; and (3) the proponents of the settlement are experienced in similar litigations. This examination is generally "made

on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties." (*In re National Football League Players' Concussion Injury Litigation* (E.D. Pa. 2014) 961 F.Supp.2d 708; *see also Bernhard v. TD Bank, N.A.* (D.N.J., Oct. 5, 2009, CIV.08-4392RBK/AMD) 2009 WL 3233541, *citing In re Nasdaq Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y.1997); *Smith v. Professional Billing & Management Services, Inc.* (D.N.J., Nov. 21, 2007, 06-4453JEI) 2007 WL 4191749 and NEWBERG ON CLASS ACTIONS, § 11.25.

The approval of a proposed settlement of a class action is a matter within the broad discretion of the trial court. Settlements of class actions are favored in the law. (*In re General Motors Truck Litigation*, 55 F.3d at 784.) The question of whether a proposed settlement is fair, reasonable and adequate necessarily requires a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with the likely rewards of litigation." (*In re Nat'l Football League*, at *5; *Weinberger v. Kendrick* (2d Cir. 1982) 698 F.2d 61; *Collier v. Montgomery County Housing Authority* (E.D. Pa. 2000) 192 F.R.D. 176, 184 (citing factors established in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)).) Therefore, many courts recognize that the opinion of experienced counsel supporting the settlement is entitled to considerable weight.

In addition to being substantively reasonable in relation to the risks and likely rewards of litigation, the proposed settlement must be ''the result of good faith, arms length negotiations." (*Collier*, 192 F.R.D. at 184.) In evaluating this requirement, courts proceed as follows -- if the proposed settlement appears to be the product of serious informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to Class Representatives or segments of the Class, and falls within the range of possible approval, then the court should direct that notice be given to the Class Members of a formal fairness hearing, at which evidence may be presented in support of and in opposition to the settlement. (*Id.*)

A finding that these factors are present establishes an initial presumption of fairness. (*Id.*; *see also General Motors*, 55 F.3d at 785-86.) Here, the proposed settlement meets these standards.

III.    **THE PROPOSED SETTLEMENT SATISFIES THE STANDARDS FOR PRELIMINARY APPROVAL.**

An analysis of the Rule 23 certification requirements and the proposed settlement demonstrates that the settlement should be preliminarily approved because the settlement provides for a fair and reasonable resolution.

A.    The Class/PAGA Action claims

On October 17, 2016, Plaintiff Gonzalez filed a Complaint initiating a class action lawsuit against Defendant in the Kern County Superior Court, which was removed by Defendant to this Court or on or about December 19, 2016 (the "Gonzalez Lawsuit"). The Gonzalez Lawsuit alleges causes of action for: (1) failure to pay wages; (2) meal period violations; (3) rest period violations; (4) waiting time penalties; and (5) unfair competition, pre-judgment interest, and attorneys' fees and costs. Under Plaintiff's legal theories, if successful at trial, class members could recover damages of over $10 million.

On June 21, 2017, Plaintiff Richards filed a Complaint initiating a class action lawsuit against Defendant in San Diego Superior Court, which was removed by Defendant and transferred to this Court on or about July 21, 2017 (the "Richards Lawsuit").  On February 11, 2018, a First Amended Complaint was filed in the *Richards* Lawsuit.  The First Amended Complaint in the Richards Lawsuit alleges causes of action for: (1) failure to allow or pay for meal periods; (2) failure to allow or pay for rest periods; (3) waiting time penalties; (4) failure to provide itemized wage statements; (5) violation of California Business and Professions Code Section 17200; and (7) violation of the Private Attorney General Act.

Defendant has vigorously disputed its liability in the Gonzalez Lawsuit and in the Richards Lawsuit (collectively this "Litigation"), contending that the claims are not subject to certification and that it did not violate any provisions of law.

B.    The course of proceedings and settlement negotiations

On December 11, 2017, the Parties to the Gonzalez Lawsuit participated in a full-day mediation with Joel Grossman, a well-respected mediator, after engaging in extensive documentary discovery and exchanging extensive payroll and time-keeping data for the entire putative class. Although no agreement was reached at that time, counsel in the *Gonzalez* Lawsuit continued to negotiate, through the mediator

and directly, and were ultimately able to reach an agreement to settle the *Gonzalez* Lawsuit and the *Richards* Lawsuit on the terms set forth in the Settlement. The Parties' negotiations were always adversarial, non-collusive, and at arm's length.

The Parties are sufficiently familiar with the facts of the Litigation and the applicable law and have conducted sufficient informal and formal discovery to be sufficiently familiar with the facts, merits, and risks of Plaintiffs' claims.

C.    The material provisions of the settlement agreement

1.    **The Settlement Class Period**

The period from October 17, 2012 through April 30, 2018.

2.    **The Settlement Class**

All persons who Defendant employed in a Covered Position (*i.e.*, all non-exempt employees who were employed by Defendant in California at any time during the Settlement Class Period.)

3.    **The Settlement Subclasses**

The Agreement provides for the creation of the following subclasses:

- **Subclass 1:** members of the Settlement Class who worked at the California City Correctional Facility ("Cal City") or at the San Diego Detention Center ("SDDC") and/or Otay Mesa Detention Center ("OMDC") (hereinafter the SDDC and OMDC are referred to collectively as the "San Diego facilities") in the non-exempt positions of Detention Officer, Senior Detention Officer, and/or Assistant Shift Supervisor (approximately 607 members).

- **Subclass 2:** members of the Settlement Class who worked at the Cal City or San Diego facilities in any non-exempt position not identified in Subclass 1 approximately 199 members).

- **Subclass 3:** members of the Settlement Class who worked at the 2727 Boston Avenue, San Diego, CA ("Boston Avenue") and/or 551 South Street, San Diego, CA ("Ocean View") facilities in any non-exempt position (approximately 336 members).

4.    **The Class benefits**

a)    **Gross settlement to Class Members**

Under the Settlement, Defendant agrees to fund a total non-reversionary Settlement Amount of $3,002,606.46 million for the benefit of Settlement Class Members.

### b)    Net Settlement to Class Members

The following deductions will be made from the Settlement Amount to arrive at the Net Settlement Fund that will be distributed to the Settlement Class Members.

### (1)    Administration Costs

The Parties have obtained a "not to exceed" bid from the Settlement Administrator of $13,000. The cost of notice and settlement administration are properly considered part of the value of a settlement. (*Staton v. Boeing Co.* (9th Cir. 2003) 327 F.3d 938, 975.)

### (2)    Attorneys' fees

As part of the final approval of this Settlement, Class Counsel will apply to the Court for an award of attorneys' fees of one-third of the $3 million Settlement Amount. Defendant will not oppose such application. If the Court does not approve the Settlement Class Counsel Fee Award of $1 million, the difference between this amount and the actual amount approved shall be available for distribution to the Settlement Class Members.

### (3)    Attorneys' costs

As part of the final approval of this Settlement, Settlement Class Counsel will apply to the Court for an award of costs in an amount not to exceed $40,000 ("Settlement Class Counsel Costs"). Defendant will not oppose such application. The difference between this amount and the actual amount approved shall be available for distribution to the Settlement Class Members.

### (4)    PAGA payment

As part of the final approval of this Settlement, the Parties shall apply to the Court for approval of a payment under the PAGA. The Parties have agreed to allocate $300,000 (the "LWDA Payment") of the Settlement Amount towards resolution of all PAGA claims. From the total LWDA Payment, and if approved by this Court, the Settlement Administrator shall issue a payment of 75% of the LWDA Payment ($225,000) to the LWDA from the Settlement Amount. The remaining 25% of the LWDA Payment ($75,000) shall be included in calculation of the Net Settlement Fund.

If the matter were litigated, PAGA penalties would be subject to judicial discretion and, of course, a liability determination in favor of the employees with respect to the policies and practices employed by Defendant. Further, the trial methodology of PAGA cases continues to develop and is

uncertain. Defendant's position is that if this action were tried as a PAGA representative action, it would be unmanageable and involve thousands of individual issues. Moreover, penalty calculations for alleged PAGA penalty claims, although substantial, would be subject to judicial discretion and are not mandatory. PAGA penalties, if awarded, would require 75% of any award to be paid to the State of California. Fortunately, the Settlement provides substantially more benefits to the class members.

### (5)    Incentive Awards

Subject to Court approval, Plaintiffs will apply to the Court for Incentive Awards of not to exceed $15,000 to Plaintiff Jose Gonzalez and an amount not to exceed $10,000 to be paid to Plaintiff Thomas Richards in recognition of their efforts and work in prosecuting the Actions on behalf of Settlement Class Members and represented employees and for their general release of claims against Defendant. The difference between these amounts and the actual amounts approved shall be available for distribution to the Settlement Class Members.

The requested service payments are fair and reasonable because each named Plaintiff was instrumental in this litigation and in achieving an extraordinary result for each member of the Class in this case. Plaintiffs have invested a great deal of personal time and effort into the investigation, prosecution, and the settlement of the case, provided written responses to written discovery and production of documents, as will be set forth in each of their declarations to be filed in conjunction with the motion for final approval of class action settlement and motion for award of attorneys' fees, litigation costs, and administration expenses.

### c)    Allocation of Net Settlement Fund

The Agreement provides that Net Settlement Fund will be allocated to subclasses of the Settlement Class (each, a "Settlement Subclass") as follows:

- **Subclass 1:** 80% of the Net Settlement Fund will be allocated to members of the Settlement Class who worked at the California City Correctional Facility ("Cal City") or at the San Diego Detention Center ("SDDC") and/or Otay Mesa Detention Center ("OMDC") (hereinafter the SDDC and OMDC are referred to collectively as the "San Diego facilities") in the non-exempt positions of Detention Officer, Senior Detention Officer, and/or Assistant Shift Supervisor.

- **Subclass 2:** 12.5% of the Net Settlement Fund will be allocated to members of the Settlement Class who worked at the Cal City or San Diego facilities in any non-exempt position not identified in paragraph (a) above.

- **Subclass 3:** 7.5% of the Net Settlement Fund will be allocated to members of the Settlement Class who worked at the 2727 Boston Avenue, San Diego, CA ("Boston Avenue"), 551 South Street, San Diego, CA ("Ocean View"), and/or 2800 Apricot Street, Live Oak, CA ("Leo Chesney") facilities in any non-exempt position.

The total potential recovery for the "hours worked" claim based on the security line claim was calculated to be approximately $4.5 million. The total meal and rest period claims for the class members at the Cal City and San Diego facilities (assuming no discount and based on estimated total shifts worked) was calculated to be approximately $9 million, and the 203 and 226(e) penalties for the same class (with no discount for the "willful" and "intentional and knowing" requirements) was approximately $2.2 million for the class members at the Cal City and San Diego facilities. Subclass 1 members were allocated the bulk of the settlement because they were correctional officers who were subject to the most control during their shifts and were required to be relieved for meal and rest periods and were also required to go through the security procedures at the Cal City and San Diego facilities, which Plaintiff contends constituted "hours worked."

Subclass 2 members, non-correctional officer employees at the Cal City and San Diego facilities, also were required to go through the security procedures, but were subject to less control by Defendant over their meal and rest periods because they were not correctional officers. They were therefore allocated less settlement funds.

Subclass 3 members were not correctional officers and did not have to go through any security procedures at the Boston Avenue, Ocean View, and Leo Chesney facilities and were therefore allocated the least settlement funds.

The total potential recovery for the "hours worked" claim based on the security line claim was calculated to be approximately $4.5 million. The total meal and rest period claims for the class members at the Cal City and San Diego facilities (assuming no discount and based on estimated total shifts worked) was calculated to be approximately $9 million, and the 203 and 226(e) penalties for the same class (with no discount for the "willful" and "intentional and knowing" requirements) was

approximately $2.2 million for the class members at the Cal City and San Diego facilities. Calculation of Individual Settlement Shares

Individual Settlement Payments will be calculated and apportioned from the Net Settlement Fund based on the Gross Earnings of each Participating Settlement Class Member in a Covered Position during the Settlement Class Period. The Gross Earnings for each member of the Settlement Class during the Settlement Class Period will be known as the Individual Settlement Class Member Payroll. The total gross payroll for each Settlement Subclass shall be calculated by adding together the Individual Settlement Class Member Payroll for all members of the Settlement Subclass. This total sum will be known as Total Settlement Subclass Payroll. The Settlement Administrator shall then divide each Settlement Subclass member's Individual Settlement Class Member Payroll by the applicable Total Settlement Subclass Payroll. This calculation will result in a percentage figure for each member of the Settlement Class (the "Percentage Figure"). A Participating Settlement Class Member's share of the Net Settlement Fund will be calculated by multiplying the Participating Settlement Class Member's Percentage Figure by the portion of the Net Settlement Fund allocated to the applicable Settlement Subclass.  The minimum Individual Settlement Payment to any Class Member will be a gross amount of $25.00, which amount will be paid for out of the Met Settlement Fund allocated to each Settlement Subclass.

**5.    Class Notice**

The Notice to be sent to each individual Class member (Exhibit A to the Settlement Agreement) is sufficient to inform Class members regarding: (a) the formation of the Class; (b) the Class definition; (c) the terms of the proposed settlement; (d) the proposed request for an award of attorneys' fees and expenses to counsel; (e) the proposed incentive payment to the Representative Plaintiffs; (f) Class members' right to opt out of the Class and thereby not participate in the proposed settlement; (g) Class members' right to object to the proposed settlement; (h) the time and date of the Final Approval Hearing; and, (i) Class members' right to appear at the Final Approval Hearing in favor of or in opposition to the proposed settlement. The Notice is clear in content and provides Class members with

sufficient information to make an intelligent decision as to whether to remain in the Class, opt out of the Class, or object to any aspect of the proposed settlement.

### 6.    Release of Claims

Once the Settlement is granted Final Approval by the Court, Class Members who do not timely request exclusion from the Settlement will release their Released Claims against the Released Parties, which includes Defendant.

### 7.    Notice to the LWDA

In connection with the allocation of $300,000 from the Settlement Amount for the satisfaction of PAGA claims for civil penalties on behalf of all Class Members, a copy of this Motion, including the Settlement Agreement, have been served on the California Labor and Workforce Development Agency contemporaneously with the filing of this Motion as reflected in the attached proof of service.

## IV.  PROPOSED SCHEDULE

If the Court grants preliminary approval of the Settlement by May 15, 2018, Plaintiff proposes the following schedule:

- **June 1, 2018:** Defendant's deadline to provide a complete list with each Class Member's full name, mist recent mailing address, Social Security Number, dates of employment, name/title of he Covered Position(s) in which they were employed during the Class Period, the location(s) where they were employed during the Class Period, and the respective Gross Earnings for each Settlement Class Member in a Covered Position during the Class Period to the Claims Administrator.

- **June 18, 2018:** Deadline for the Claims Administrator to mail the notice packet to the Class Members.

- **August 13, 2018:** Deadline for Class Members to opt-out or object to the Settlement.

- **September 3, 2018:** Deadline for Class Counsel to file the motion for Final Approval of the Class Action Settlement, request for attorneys' fees and costs, and request for Class Incentive Awards.

- **October 2, 2018:** Final Fairness Hearing and hearing on Class Counsel's motion for attorneys' fees and costs, and request for Class Incentive Awards.

## V.  THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR CLASS CERTIFICATION.

To conditionally certify the class, the Court must apply the six (6) prerequisites under Fed. Rules Civ.Proc., rule 23(a) and 23(b)(3). The Rule 23(a) requirements are: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the class: (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. (Fed. Rules Civ.Proc., rule 23(a).) Federal Rule 23(b)(3) adds two additional requirements including: (5) predominance of common questions; and (6) superiority of the action as a class action.

    A.      The requirements of Fed.R.Civ.P. 23(a) are satisfied.

Class certification requires a representative plaintiff to establish the four requirements of Fed.R.Civ.P. 23(a). (*Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 613 [117 S.Ct. 2231, 2244, 138 L.Ed.2d 689].) Rule 23 (a) requires that: (1) the class be so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representatives' claims or defenses are typical of those of the class; and (4) the representatives will fairly and adequately represent the interests of the class. (Fed. Rules Civ.Proc., rule 23(a).)

    **1.**      **The numerosity required by Rule 23(a)(1) is satisfied.**

Numerosity, the first prerequisite of class certification, requires that the class be "so numerous that joinder of all members is impractical." (Fed. Rules Civ.Proc., rule 23(a)(1).) The first requirement under Rule 23(a) is that the putative class must be "so numerous that joinder of all members is impracticable." (Fed. Rules Civ.Proc., rule 23(a)(1); *Weekes-Walker v. Macon County Greyhound Park, Inc.* (M.D. Ala. 2012) 281 F.R.D. 520, 524.) Although this requirement is often termed a test of numerosity, it also includes considerations such as judicial economy and financial resources of the class members. As a general rule, courts have held that more than 40 putative class members satisfy the numerosity requirement. "Generally, a class should have no fewer than 21 members and will satisfy the numerosity requirement if it has more than 40." (*Martinez v. Mecca Farms, Inc.* (S.D. Fla. 2002) 213 F.R.D. 601, 605; *see also Cox v. American Cast Iron Pipe Co.* (11th Cir. 1986) 784 F.2d 1546, 1553.)

Here, the Settlement Class consists of 1076 current and former employees of Defendant who worked at six different facilities operated by Defendant in the state of California during the Settlement

Class Period.[1]  Thus, the numerosity requirement of Rule 23 is satisfied. (*See Bruno v. Quten Research Inst., LLC* (C.D. Cal. 2011) 280 F.R.D. 524, 533 ("Where the exact size of the proposed class is unknown, but general knowledge and common sense indicate it is large, the numerosity requirement is satisfied.").)

The identity of the class members are also ascertainable through CoreCivic's employment records.

### 2.    The commonality requirement is satisfied.

The Court must also find that "there are questions of law or fact common to the class." (Fed. Rules Civ.Proc., rule 23(a)(2).) "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" (*Mazza v. American Honda Motor Co., Inc.* (9th Cir. 2012) 666 F.3d 581, 589 (*quoting Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 350 [131 S.Ct. 2541, 2551, 180 L.Ed.2d 374].) "The plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." (*Id.* (internal quotation marks and citation omitted).)

The commonality requirement set forth in Rule 23 (a) is satisfied if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class. (*Baby Neal for and by Kanter v. Casey* (3d Cir. 1994) 43 F.3d 48, 56 (citations omitted).) The commonality requirement is not a high bar. (*Id.*, 43 F.3d at 56 ("Because the requirement may be satisfied by a single common issue, it is easily met .....").) "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." Common nuclei of fact exist where the defendant has engaged in standardized conduct towards members of the proposed class.

Here, the questions of law and fact common to the Class include, but are not necessarily limited to the following:

---

[1] The total number of employees is less than the sum of the three subclasses because due to the fact that certain Class Members worked in more than one subclass during the Class Period.

- Whether Defendant's on-duty meal period agreement is lawful.
- Whether Class Members were provided with legally compliant meal periods.
- Whether Class Members were provided with legally compliant rest periods.
- Whether the time spent by Class Members going through Defendant's pre-shift and post-shift security procedures constitute "hours worked" under California law.
- Whether Class Members were paid overtime for all overtime hours worked.
- Whether Class Members were paid minimum wages for all hours worked.
- Whether Class Members were provided with legally compliant itemized wage statements.
- Whether Defendant's alleged failure to pay Class Members for all hours worked, minimum wages, overtime, meal period wages, or rest period wages was willful for purposes of California Labor Code Section 203.

### 3.    Typicality under Rule 23(a)(3) is present.

Rule 23 (a) requires that the claims of the representative parties be "typical" of those of the class. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " (*Evon v. Law Offices of Sidney Mickell* (9th Cir. 2012) 688 F.3d 1015, 1030 (internal quotation marks and citation omitted).) "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." (*Ellis v. Costco Wholesale Corp.* (9th Cir. 2011) 657 F.3d 970, 984 (internal quotation marks and citation omitted).) The "threshold for establishing typicality is low." (*Seidman v. American Mobile Systems, Inc.* (E.D. Pa. 1994) 157 F.R.D. 354, 360.)

Typical, however, does not mean identical, and factual homogeneity between representative Plaintiff and all Class members is not required. (*Baby Neal*, 43 F.3d at 57, *In re Chambers Development Securities Litigation* (W.D. Pa. 1995) 912 F.Supp. 822, 834 ("'typical' does not mean identical"); *In re Phar-Mor, Inc. Securities Litigation* (W.D. Pa. 1994) 875 F.Supp. 277, 279 (interests of Plaintiffs and proposed class need not be identical).) "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." (*Baby Neal*, 43 F.3d at 58. *Safran v. United Steelworkers of America, AFL-CIO* (W.D. Pa. 1989) 132 F.R.D. 397, 402. *See also Zinberg v. Washington Bancorp, Inc.* (D.N.J. 1990) 138 F.R.D. 397, 401 ("focus is on the Defendant's behavior . . . and on whether the class can point to the same general, over-all course of

conduct" in determining typicality).) Typicality is usually present in "cases challenging the same unlawful conduct which affects both the named Plaintiffs and the putative class ...." (*Baby Neal*, 48F.3d at 58.)

"Rule 23 does not require that the representative plaintiff have endured precisely the same injuries that have been sustained by the class members, only that the harm complained of be *common* to the class, and that the named plaintiff demonstrate a personal interest or "threat of injury ... [that] is 'real and immediate,' not 'conjectural' or 'hypothetical.' " *O'Shea*, 414 U.S. at 494, 94 S.Ct. at 675 . . ." (*Hassine v. Jeffes* (3d Cir. 1988) 846 F.2d 169, 177.)

Even when there are actual differences between the representative parties and the rest of the class, a proposed class will meet Rule 23 (a)(3) requirements if "the claim arises from the same events or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." (*Hassine v. Jeffes* (3d Cir. 1988) 846 F.2d 169, 177.)

Here, Plaintiffs' claims arise from the practice and course of conduct that gives rise to the claims of all Class Members. Plaintiffs and the putative class members were subject to the same course of conduct. Plaintiffs' claims are typical of the putative class because both Plaintiffs and the putative class seek recovery based upon the same legal theories and course of conduct by CoreCivic, *i.e.*:

- That Defendant's practice of having Class Members work during on-duty meal breaks results in a practice of failing to provide off-duty meal breaks.

- Defendant's failure to provide legally compliant meal and rest periods.

- Defendant's failure to pay for Class Member's for time going through Defendant's pre-shift and post-shift security procedures.

- Defendant's failure to pay Class Members minimum wages for all hours works and overtime for all overtime hours worked.

- Defendant's failure to provide Class Members with accurate itemized wage statements.

- Defendant's willful failure to pay Class Members all wages owed at the time of termination.

### 4.    Plaintiffs are adequate representatives.

To determine whether the named plaintiffs "will fairly and adequately protect the interests of the class" under Rule 23 (a)(4), the Court must ask: "(1) do the named plaintiffs and their counsel have any

conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" (*Evon*, 688 F.3d at 1031 (*quoting Hanlon v. Chrysler Corp.* (9th Cir. 1998) 150 F.3d 1011, 1020).)

The adequacy requirement "encompasses two distinct inquiries designed to protect the interests of absentee class members: 'it considers whether the named Plaintiffs' interests are sufficiently aligned with the absentees,' and it tests the qualifications of the counsel to represent the class." (*In re Community Bank of Northern Virginia* (3d Cir. 2005) 418 F.3d 277, 303 (*quoting In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation* (3d Cir. 1995) 55 F.3d 768, 800). *Hoxworth v. Blinder, Robinson & Co., Inc.* (3d Cir. 1992) 980 F.2d 912, 923 (citation omitted); *see also Wetzel v. Liberty Mut. Ins. Co.* (3d Cir. 1975) 508 F.2d 239, 247; *Chambers*, 912 F.Supp. at 834-35.) Counsel for the named Plaintiff must be experienced and qualified and generally be able to conduct the litigation. (*See, e.g. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (3d Cir. 2001) 259 F.3d 154, 185, *as amended (Oct. 16, 2001)*; *Chakejian v. Equifax Information Services*, LLC, 256 F.R.D. at 498.)

Here, neither Plaintiffs nor their counsel have any conflicts of interest with other class members. Plaintiffs are fully prepared to take all necessary steps to fairly and adequately represent the classes and have agreed to abide by all of the necessary duties of a class representative, including assisting counsel in the litigation.

Moreover, counsel for the named Plaintiffs are experienced in handling class action lawsuits.

B.    The requirements of Fed.R.Civ.P. 23(b)(3) are satisfied.

Plaintiffs must also meet one of the provisions of Rule 23(b) to succeed on his motion for class certification of the federal claims. (*See* Fed. Rules Civ.Proc., rule 23(b).) Rule 23(b)(3) provides: "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Fed. Rules Civ.Proc., rule 23(b)(3).) This requirement is satisfied in this case.

In *Amchem Products, Inc. v. Windsor* (1997) 521 U.S. 591, 594 [117 S.Ct. 2231, 2235, 138 L.Ed.2d 689], the Supreme Court noted that "[I]n general, predominance is met when there exists

generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class members' individual position." (*Id.*, 521 U.S. at 625; *Allapattah Services, Inc. v. Exxon Corp.* (11th Cir. 2003) 333 F.3d 1248, 1260–1261, *aff'd sub nom. Exxon Mobil Corp. v. Allapattah Services, Inc.* (2005) 545 U.S. 546 [125 S.Ct. 2611, 162 L.Ed.2d 502], *quoting In re Vitamins Antitrust Litigation* (D.D.C. 2002) 209 F.R.D. 251, 262; *Chakejian, LLC*, 256 F.R.D. at 500.

      1.      **Common questions predominate because the class claims arise from a common nucleus of fact and involve overriding common questions.**

The elements of Plaintiffs' substantive claims are subject to proof by generalized, common evidence. Plaintiffs' claim includes the following elements of proof:

- Did Defendant provide legally compliant meal periods to Class Members.
- With respect to Defendant's defense to Plaintiffs' on-duty meal period claim, can Defendant establish that the on-duty meal period agreement it used was in a legally compliant form.
- With respect to Defendant's defense to Plaintiff's on-duty meal period claim, can Defendant establish that the nature of the work of Detention Officers, Senior Detention Officers, and Assistant Shift Supervisors excuses it from providing off-duty meal periods.
- Did Defendant provide Class Members with legally compliant meal periods.
- Did Defendant provide Class Members with legally compliant rest periods.
- Does the uncompensated time spent by Class Members at the Cal City and San Diego facilities going through Defendant's pre-shift and post-shift security procedures constitute "hours worked" under California law.
- Did Defendant compensate Class Members for all hours worked.
- Did Defendant pay Class Members minimum wages for all hours worked.
- Did Defendant pay Class Members overtime for all overtime hours worked.
- Did Defendant provide Class Members with legally compliant itemized wage statements.
- Did Defendant willfully fail to pay Class Members for all hours worked, minimum wages, overtime, meal period wages, or rest period wages under California Labor Code Section 203.

Courts in the Ninth Circuit routinely hold that the commonality requirement of Rule 23(a) is satisfied where, as here, the Defendant has a policy and practice that allegedly fails to provide putative class members off-duty meal breaks and thus allegedly violates Wage Order 4–2001 § 11. (*See Dilts v.*

*Penske Logistics, LLC* (S.D. Cal. 2010) 267 F.R.D. 625, 633 (granting class certification and finding commonality because defendants-employers' "policies were common across [d]efendant's California facilities" and case was subject to common proof, namely whether the "policies deprived the putative class members of meal periods," and "common legal questions, such as [d]efendants' obligations under California Labor Code §§ ... 226, 226.7," as specified in "Wage Order 4–2001"); *Schulz v. QualxServ, LLC* (S.D. Cal., Apr. 26, 2012, No. 09-CV-17-AJB MDD) 2012 WL 1439066, at *4 (granting class certification and finding commonality because the issue of whether "Defendants' policies and practices comply with [Wage Order 4–2001] is the type of question that can be answered on a classwide basis" and listing several cases reaching the same result); *Delagarza v. Tesoro Refining and Marketing Co.* (N.D. Cal., Sept. 8, 2011, No. C-09-5803 EMC) 2011 WL 4017967, at *8 (granting class certification and finding commonality because "Plaintiffs contend, and the evidence indicates, the challenged policy applies to all the members of the class throughout the facility with only exceptional variations").)

For example, in *Delagarza v. Tesoro Refining and Marketing Co.* (N.D. Cal., Sept. 8, 2011, No. C-09-5803 EMC) 2011 WL 4017967, at *15-16, the court granted certification and found predominance under Rule 23(b)(3), because the common question of whether Defendant's policy deprived the putative class of "off-duty" meal breaks in violation of Wage Order 4–2001 was susceptible to common proof, shown by defendant's policy requiring on-duty breaks and testimony by the defendant's 30(b)(6) deponents that this policy was implemented in practice. The defendant argued that the "allegations are susceptible to only individual adjudication because there are substantial differences between and among the various positions covered in the purported class" and that "individual job duties vary unit to unit and day to day." (*Id.* at *6.) The court rejected this argument, however, because "[s]ome of the variations cited by [the defendant] are not material to the central issues in this case—i.e., whether workers, regardless of the nature of their jobs, are afforded an off-duty meal period." (*Id.* at *11.) The court reasoned that the plaintiffs could provide common proof because they "rely in large part on [d]efendant's own written policies as well as the company's own supervisors and 30(b)(6) deponents' testimony to make their class-wide claim." (*Id.* at *17.) In addition, the court noted that even if there was "some" material variation, "such variation does not" defeat the predominance requirement. (*Id.* at *11.)

This case is remarkably similar to *Delagarza* because it: (1) involves the *same* common question, that is, whether CoreCivic's policy deprived the putative class of off-duty breaks in violation of Wage Order 4–2001; (2) is based on the *same* common proof, shown by CoreCivic's policy requiring on-duty breaks; and (3) CoreCivic asserts the *same* affirmative defense regarding the nature of the work.

Plaintiff's use of common proof to establish a prima facie case meets the predominance requirement because the "focus of the proposed class action will be on the words and conduct of the defendants rather than on the behavior of the individual class members." (*See Ortega v. J.B. Hunt Transport, Inc.* (C.D. Cal. 2009) 258 F.R.D. 361, 367.) Because Plaintiff has shown that the putative class's prima facie case is susceptible to common proof, Plaintiff has shown that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," which is all that is necessary to meet the predominance requirement of Rule 23(b)(3). This conclusion is consistent with courts "traditionally be[ing] reluctant to deny class action status" under predominance requirement of Rule 23(b)(3) "simply because affirmative defenses may be available against individual members." (*See Lorber v. Beebe* (S.D.N.Y. 1975) 407 F.Supp. 279, 294, *amended* (S.D.N.Y., Feb. 11, 1976, No. 74 CIV. 384) 1976 WL 768.)

Similarly, whether Defendant violated its obligation to provide Class Members with legally compliant meal periods and rest breaks is susceptible to common proof.

Finally, whether the time spent by class members going through the pre-shift and post-shift security procedures constitutes compensable "hours worked" is a legal issue that applies to all security line class members because all class members were subject to the same security procedures. (*See Cervantez v. Celestica Corp.* (C.D. Cal. 2008) 253 F.R.D. 562, 573.)

      **2.**     **A class action is the superior method of adjudication because individual litigation is not feasible and the claims are manageable.**

The second prong of the analysis under Rule 23(b)(3) also requires a finding that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (Fed. Rules Civ.Proc., rule 23(b)(3).) Factors relevant to the superiority requirement include:

      (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action. (Fed. Rules Civ.Proc., rule 23(b)(3).)

"A consideration of these factors require the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." (*Zinser v. Accufix Research Institute, Inc.* (9th Cir. 2001) 253 F.3d 1180, 1190, *opinion amended on denial of reh'g* (9th Cir. 2001) 273 F.3d 1266 (internal citation omitted).)

Here, "[g]iven the small size of each class member's claim, class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the present action." (*See Bruno v. Quten Research Inst., LLC* (C.D. Cal. 2011) 280 F.R.D. 524, 537.) Indeed, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device." (*Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427].) Furthermore, each member of the class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23. (*See Vinole v. Countrywide Home Loans, Inc.* (9th Cir. 2009) 571 F.3d 935, 946 ("The overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy.").)

To the extent that Defendant argues that the class action vehicle renders trial inherently unmanageable, this case is eminently manageable and damages may be presented easily at trial or prior to trial in a class-wide Rule 56 motion. The number of shifts worked by class members can be shown by Defendant's own time-records, from which the damages for meal period and rest period premiums can be calculated. Similarly, from such shift information and using time-studies and arriving at an average for unpaid pre-shift and post-shift time, the amount owing for the time spent going through Defendant's

security procedures can be calculated. The damages for the 203 claim are also readily calculable from Defendant's payroll records.

Finally, the superiority of a class action is evident when considering the alternatives. In one scenario, the putative class members each file individual claims, an unrealistic prospect that, if it occurred, would needlessly consume judicial resources in a repetitive re-adjudication of the same facts and law. In another, more likely scenario, these individual actions are never brought because the putative class members are hourly employees with relatively modest individual claims and limited resources. While the lack of litigation might save judicial resources, such savings should not come at the expense of employees with legitimate claims. (*See Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.* (9th Cir. 2001) 244 F.3d 1152, 1163 (superiority requirement met where class members would recover, at most, about $1,330).)

Here, there is no interest by class members to individually litigate. Indeed, an employee may be economically deterred from seeking redress in an individual action because any potential recovery would be exceeded by the litigation costs. (*See Deposit Guaranty Nat. Bank, Jackson, Miss. v. Roper* (1980) 445 U.S. 326, 339 [100 S.Ct. 1166, 1174, 63 L.Ed.2d 427].) The very purpose of the class action procedure is to allow plaintiffs to pool claims which would be uneconomical to litigate individually. (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 809 [105 S.Ct. 2965, 2973, 86 L.Ed.2d 628].) It would be unfair and inefficient for each class member to individually appear before a court and prove virtually identical claims. A class action would also foster important public policies. A class action is a benefit to claimants who can share the cost of litigation when their individual recovery is relatively small, as it is in this case. Here, likewise, absent a class action, most class members could not otherwise enforce their rights.

VI.   **THE SETTLEMENT IS APPROPRIATE FOR PRELIMINARY APPROVAL.**

A.   Procedural adequacy

The first factor relevant to the court's preliminary approval of settlement addresses the means by which the parties reached the proposed settlement. (*Pierce v. Rosetta Stone, Ltd.* (N.D. Cal., May 3, 2013, No. C 11-01283 SBA) 2013 WL 1878918, at *4.) The proposed settlement in this case resulted

from non-collusive negotiation after mediation on December 11, 2017 with Joel Grossman, a well-respected mediator. Prior to the settlement, the Parties engaged in extensive documentary discovery, and Defendant provided extensive payroll and time-keeping data. The settlement was the product of informed, arm's length negotiations deserving of preliminary approval. (*See Palacios v. Penny Newman Grain, Inc.* (E.D. Cal., July 6, 2015, No. 1:14-CV-01804-KJM) 2015 WL 4078135, at *8 ("[I]t appears that the settlement was arrived at for strategic reasons that benefitted the Classes, rather than Class Counsel's inability or unwillingness to pursue further litigation.").)

B.    Substantive adequacy

In conducting the preliminary fairness determination, the court must also consider whether the settlement itself is substantively fair, reasonable, and adequate. (*See In re Bluetooth Headset Products Liability Litigation* (9th Cir. 2011) 654 F.3d 935, 945.) Several factors bear on the inquiry, including the size of the settlement award, the nature of the claims released, the amount of attorneys' fees awarded, and the size of the incentive payment to class representatives. (*See Hanlon*, 150 F.3d at 1026; *Villegas v. J.P. Morgan Chase & Co.* (N.D. Cal., Nov. 21, 2012, No. CV 09-00261 SBA EMC) 2012 WL 5878390, at *6–7.)

1.    **Adequacy of the Settlement Amount**

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." (*See Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson* (1968) 390 U.S. 414, 424–425 [88 S.Ct. 1157, 1163, 20 L.Ed.2d 1].) "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." (*In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 459, *as amended (June 19, 2000)*.)

Here, the gross settlement amount is $3,002,606.46, with an estimated $1,699,606.46 to be distributed to class members. Based on Defendant's business and personnel records, there are an estimated 1076 class members who worked during the class period.

The proposed settlement would provide Settlement Class Members a payment (without the requirement of making a claim) for their claimed damages.

- **Subclass 1:**The average, maximum and minimum payments from the 80% of the Net Settlement Fund that is allocated to members of the Settlement Class who worked at the California City Correctional Facility ("Cal City") or at the San Diego Detention Center ("SDDC") and/or Otay Mesa Detention Center ("OMDC") (hereinafter the SDDC and OMDC are referred to collectively as the "San Diego facilities") in the non-exempt positions of Detention Officer, Senior Detention Officer, and/or Assistant Shift Supervisor are $2,240.01, $6,119.67 and $25.00, respectively.

- **Subclass 2:** The average, maximum and minimum payments from the 12.5% of the Net Settlement Fund that is allocated to members of the Settlement Class who worked at the Cal City or San Diego facilities in any non-exempt position not identified in paragraph (a) above are $1,067.59, $4,586.27 and $25.00, respectively.

- **Subclass 3:** The average, maximum and minimum payments from 7.5% of the Net Settlement Fund that is allocated to members of the Settlement Class who worked at the 2727 Boston Avenue, San Diego, CA ("Boston Avenue") and/or 551 South Street, San Diego, CA ("Ocean View") facilities in any non-exempt position are $379.38, $1,575.03 and $25.00, respectively.[2]

The total potential recovery for the "hours worked" claim based on the security line claim was calculated to be approximately $4.5 million. The total meal and rest period claims for the class members at the Cal City and San Diego facilities (assuming no discount and based on estimated total shifts worked) was calculated to be approximately $9 million, and the 203 and 226(e) penalties for the same class (with no discount for the "willful" and "intentional and knowing" requirements) was approximately $2.2 million for the for the class members at the Cal City and San Diego facilities. While Plaintiffs believe in the merits of their case, they also recognize the inherent risks and uncertainty of litigation and understand the benefits of providing significant settlement payments to the Class now as opposed to risking (i) the Court's denial of certification; and (ii) an unfavorable result on the merits on summary judgment or at trial and/or on an appeal, a process that can take several more years to litigate. Plaintiffs' claims involve complex and disputed legal issues and fact-specific arguments that the Parties have been litigated fiercely since inception of the action. Plaintiffs firmly believe in the strength of their claims, but Defendant also has strong defenses to liability and certification.

---

[2] By subclass, individuals receiving the $25 minimum payment had average earnings of $576.25, $743.67 and $1,633.57, respectively, during the entire Class Period.

**Memorandum in Support of Unopposed Motion for Preliminary Approval**

Defendant has presented significant defenses and good faith objections to Plaintiffs' ability to obtain Rule 23 certification, maintaining that the claims are inappropriate for class treatment due to variations among the work duties and demands of the various class members. Defendant also asserts that the obstacles faced by Plaintiff in seeking Rule 23 certification and maintaining that certification are all the greater given the United States Supreme Court's rulings in *Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338 [131 S.Ct. 2541, 180 L.Ed.2d 374] and *Comcast Corp. v. Behrend* (2013) 569 U.S. 27 [133 S.Ct. 1426, 185 L.Ed.2d 515]. Relying on *Dukes* and *Comcast*, along with many other cases, Defendant believes Plaintiffs will not be able to obtain certification outside of the Settlement context. Defendant further contends *Dukes* explicitly disapproved the use of sampling and surveys to determine class-wide practices and that *Comcast* overturned a certification ruling based on the named representative's failure to identify a reliable damages model that could be used on a class-wide basis. (*Dukes*, 131 S. Ct. 15 2561; *Comcast*, 133 S. Ct. at 1432-33.) Thus, while Plaintiff believes and continues to believe this is a strong case for Rule 23 certification, there is always a risk and enormous expense associated with class certification proceedings. Similarly, while Defendant believes Plaintiffs will face several steep hurdles going forward should this matter not resolve, it acknowledges that there are risks and significant expenses associated with proceeding further in the case.

### 2. Attorney's fees

Here, the settlement provides for attorneys' fees of not more than one-third of the gross settlement amount, for a total of not greater than $1 million. If the Court awards less than the amounts requested by Class Counsel for the attorneys' fees and/or costs, the difference becomes part of the net settlement fund and is available for distribution to Settlement Class Members.

The Ninth Circuit has approved two methods for determining attorneys' fees in such cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. (*Vizcaino v. Microsoft Corp.* (9th Cir. 2002) 290 F.3d 1043, 1047 (citation omitted).) The district court retains discretion in common fund cases to choose either method. (*Id.*; *Vu v. Fashion Institute of Design & Merchandising* (C.D. Cal., Mar. 22, 2016, No. CV 14-08822 SJO (EX)) 2016 WL 6211308, at *5.) Under either approach,

"[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." (*Fischel v. Equitable Life Assur. Society of U.S.* (9th Cir. 2002) 307 F.3d 997, 1007.)

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class. (*Id.*) Although the Ninth Circuit has held that a twenty-five percent award is the "benchmark" for an award of attorneys' fees, a number of Ninth Circuit courts have indicated that the benchmark may be one third or higher. In *Syed v. M-I, L.L.C.* (E.D. Cal., July 27, 2017, No. 112CV01718DADMJS) 2017 WL 3190341, at *8, for example, the district court approved a one-third fee award of the total recovery. (*See also In re Mego Financial Corp. Securities Litigation* (9th Cir. 2000) 213 F.3d 454, 460, *as amended (June 19, 2000)* (affirming award of fees equal to one-third of total recovery); *In re Pacific Enterprises Securities Litigation* (9th Cir. 1995) 47 F.3d 373, 379 (awarding 33% of $12 million common settlement fund); *Romero v. Producers Dairy Foods, Inc.*, 2007 U.S. Dist. LEXIS 86270 (N.D. Cal. 2007) (33% fee awarded); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *8 (S.D. Cal. 2010) (approving attorney fee award of 33.33% of the common fund and holding that the award was similar to awards in three other wage and hour class actions where fees ranged from 30.3% to 40%); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. 2005) (33.33% percentage of common fund fee award approved).)

To assess whether the percentage requested is reasonable, courts may consider a number of factors, including:

> [T]he extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis. (*In re Online DVD-Rental Antitrust Litigation* (9th Cir. 2015) 779 F.3d 934, 954–955 (internal quotation marks omitted).)

The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." (*Bluetooth*, 654 F.3d at 942.)

In *Laffitte v. Robert Half Intern. Inc.* (2016) 1 Cal.5th 480, 486 [205 Cal.Rptr.3d 555, 558, 376 P.3d 672, 674] the California Supreme Court endorsed the percentage of the fund method for calculating reasonable attorneys' fees.

### 3. Class Member's Released Claims

As discussed above, under the Settlement, the claims being released track those asserted by Plaintiffs in the Litigation, and the settlement does not release unrelated claims that class members may have against defendants (other than the Class Representatives, who are executed general releases as part of the consideration for their incentive payments).

### 4. Class Representative Enhancement payments

The settlement agreement provides for a class representative payment of $15,000 to plaintiff Gonzalez and $10,000 to plaintiff Richards, which represent approximately .5% and .33% of the gross settlement fund, respectively. If the Court awards less than the amounts requested by Class Counsel for the attorneys' fees and/or costs, the difference becomes part of the net settlement fund and is available for distribution to Settlement Class Members.

A district court may award incentive payments to named plaintiffs in class action cases. (*Rodriguez v. West Publishing Corp.* (9th Cir. 2009) 563 F.3d 948, 958–959.) The purpose of incentive awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." (*Rodriguez*, 563 F.3d at 958–59.) Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against their former employers. (*Rodriguez*, 563 F.3d at 958–59.)

The proposed incentive awards are reasonable in light of plaintiffs' time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, and stigma upon future employment opportunities for having initiated this action against a former, employer, and general release of all claims related to their employment.

### 5.    PAGA Penalty Claims

The settlement of the claims for penalties under PAGA for civil penalties in the sum of $225,000 (75% of $300,000) will be paid to the Labor Workforce Development Agency and $75,000 will be paid to the class.

Plaintiff's counsel has estimated potential PAGA exposure of over $36 million. The $300,000 penalty payment, however, represents 10% of the $3 million gross settlement amount. This exceeds in percentage and in absolute number PAGA awards approved in other cases. (*See Garcia v. Gordon Trucking, Inc.* (E.D. Cal., Oct. 31, 2012, No. 1:10-CV-0324 AWI SKO) 2012 WL 5364575, at *7 (approving $10,000 PAGA penalty for a California class with a $3.7 million gross settlement payment); *Syed v. M-I, L.L.C.* (E.D. Cal., Feb. 22, 2017, No. 112CV01718DADMJS) 2017 WL 714367, at *13 (approving 2.53% of the estimated $3.95 million gross settlement amount allocated to the California class).)

Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. (*Hopson v. Hanesbrands Inc.* (N.D. Cal., Apr. 3, 2009, No. CV-08-0844 EDL) 2009 WL 928133, at *9; see *Nordstrom Com'n Cases* (2010) 186 Cal.App.4th 576, 579 [112 Cal.Rptr.3d 27, 29] ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").)

In *Viceral v. Mistras Group, Inc.* (N.D. Cal., Oct. 11, 2016, No. 15-CV-02198-EMC) 2016 WL 5907869 , the Court found the allocation of just $20,000 to the PAGA claim (0.15% of its total value of $12,952,000) was reasonable in the context of the settlement as a whole.

In *Cotter v. Lyft, Inc.* (N.D. Cal. 2016) 193 F.Supp.3d 1030, the Court approved a $1 million PAGA allocation in a $27 million settlement amount noting:

> …Although $1 million might seem low when compared to the maximum PAGA penalties that would accrue in the event the plaintiffs won on the merits of their claims that Lyft violated the Labor Code by misclassifying them as independent contractors, ***it's quite high compared to the typical amount apportioned to claims for PAGA penalties in wage and hour settlements***. More importantly, ***courts have discretion to reduce an award of PAGA penalties when it would be "unjust, arbitrary and oppressive, or confiscatory" to impose the full amount.*** (citing Cal. Lab. Code § 2699(e)(2)). A

significant reduction would be appropriate here…." (Emphasis added.) (*Cotter, supra,* 193 F.Supp.3d 1030 at 1037.)

In *In re Uber FCRA Litigation* (N.D. Cal., June 29, 2017, No. 14-CV-05200-EMC) 2017 WL 2806698, the Court approved a settlement agreement of $7.5 million, where the amount allocated to the PAGA claims was only $7,500 – .01% of the total settlement amount.

The discretion of courts to award much smaller PAGA penalties than the calculated maximum exposure has long been recognized by Courts when considering the approval of wage and hourly class action settlements. Numerous settlements have been approved by both California and federal courts that have PAGA settlement allocations smaller as a percentage of the gross settlement than this case.

- *Martino v. Ecolab Inc.*, No. 3:14CV04358 (N.D. Cal. 2017) ($100,000 allotted as PAGA penalties or 0.48% of $21,000,000 settlement amount).

- *East v. Comprehensive Educational Services Inc.*, No. 11-CECG-04226 (2015) ($10,000 allotted as PAGA penalties or 0.13% of $7,595,846 settlement amount).

- *Bararsani v. Coldwell Banker Residential Brokerage Company*, No. BC495767 (2016) ($10,000 allotted as PAGA penalties or 0.22% of $4,500,000 settlement amount).

- *Rico v. Cardinal Health 200 Inc*. No. CIVRS-14-01451 (2017) ($5,000 allotted as PAGA penalties or 0.14% of $3,500,000 settlement amount).

- *Moppin v. Los Robles Medical Center*, No. 5:15CV01551 (C.D. Cal. 2017) ($15,000 allotted as PAGA penalties or 0.40% of $3,775,000 settlement amount).

- *Scott-George v. PVH Corporation. No.,* 2:13CV00441 (E.D. Cal. 2017) ($15,000 allotted as PAGA penalties or 0.46% of $3,250,000 settlement amount).

- *Hart v. Parkview Community Hospital Medical Center,*No. RIC-14-06044 (2016) ($10,000 allotted as PAGA penalties or 0.39% of $2,550,000 settlement amount).

- *Nehrlich v. RPM Mortgage Inc.*, No. 30-2013-00666783-CU-OE-CXC (2017) ($10,000 allotted as PAGA penalties or 0.40% of $2,500,000 settlement amount).

- *Kelley v. The Related Companies of California L.L.C. No*. CIVDS-13-07167 (2016) ($10,000 allotted as PAGA penalties or 0.50% of $2,000,000 settlement amount).

- *Reed v. Thousand Oaks Toyota*, No. 56-2012-00419282-CU-OE-VTA (2013) ($1,500 allotted as PAGA penalties or 0.43% of $350,000 settlement amount).

- *Rubio v. KTI Incorporated*, No. CIVDS-14-06132 (2015) ($1,000 allotted as PAGA penalties or 0.18% of $550,000 settlement amount).

- *Gray v. Mountain View Child Care Inc.*, No. CIVDS-14-02285 (2016) ($2,500 allotted as PAGA penalties or 0.37% of $675,000 settlement amount).

- *Perez v. West Coast Liquidators Inc. d/b/a Big Lots* No. CIVDS-14-17863 (2016) ($3,000 allotted as PAGA penalties or 0.33% of $900,000 settlement amount).

- *Alvidrez v. Unifirst Corporation* No. CIVRS-13-08105 (2016) ($5,000 allotted as PAGA penalties or 0.45% of $1,100,000 settlement amount).

- *Penaloza vs. PPG Industries Inc.* No. BC471369 (2013) ($5,000 allotted as PAGA penalties or 0.38% of $1,300,000 settlement amount).

- *Gibbins v. Hishmeh Enterprises Inc.*, No. 56-2015-00468352-CU-PO-VTA (2017) ($5,000 allotted as PAGA penalties or 0.37% of $1,350,000 settlement amount).

- *Mejia v. DHL Express (USA) Inc.*, No. 2:15CV00890 (C.D. Cal. 2017) ($5,000 allotted as PAGA penalties or 0.34% of $1,450,000 settlement amount).

- *Castrejon v. O'Connell Landscape Maintenance Inc.*, No. RIC-12-12798 (2015) ($5,000 allotted as PAGA penalties or 0.33% of $1,500,000 settlement amount).

### 6.    Proposed Class Notice and Administration

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal. Fed. R. Civ. P. 23(e)(1); *see also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." (*Churchill Village, L.L.C. v. General Electric* (9th Cir. 2004) 361 F.3d 566, 575 (internal quotations and citations omitted).)

Here, Plaintiffs' proposed notice describes what the case is about and the terms of the settlement, informs the class of the attorneys' fee amount and the proposed distribution of the settlement amount, provides information concerning the time, place, and date of the final approval hearing, and informs absent class members that they may come to the hearing and how to obtain permission to speak at the hearing. It also notifies absent class members about how they may object to the proposed settlement or opt out.

The notice and the manner of notice proposed by Plaintiffs meets the requirements of Federal Civil Procedure Rule 23(c)(2)(B) and the proposed mail delivery is also appropriate in these circumstances.

C.    The proponents of the settlement are experienced.

Finally, counsel is highly experienced in wage and hour class action litigation and endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of

experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. (*See, e.g., In re MicroStrategy, Inc. Securities Litigation* (E.D. Va. 2001) 148 F.Supp.2d 654, 665; *Stewart v. Rubin* (D.D.C. 1996) 948 F.Supp. 1077, 1087 aff'd, (D.C. Cir. 1997) 124 F.3d 1309; *Rolland v. Cellucci* (D. Mass. 2000) 191 F.R.D. 3, 6.) In counsel's opinion, there is no obvious deficiency in the class settlement.

D.    Public policy considerations support preliminary approval.

The resolution by compromise saves significant judicial resources by resolving the dispute without a lengthy class action procedure and trial. The settlement is consistent with the public interest because it is consistent with the proper administration of justice and the purpose of the California labor laws and the FLSA in ensuring that employees are paid properly.

## VII.    CONCLUSION.

The Parties have reached a Settlement in this case that provides genuine relief to Class Members. The Settlement is an excellent result considering the contentiousness of the litigation and the challenges faced by the Plaintiffs. Each Class Member is entitled to a cash recovery. In addition, the terms of the Settlement as well as the circumstances surrounding negotiations and its elimination of further costs caused by litigating this case satisfy the requirements for preliminary approval.

Accordingly, the Plaintiffs and Defendant request the Court for an Order preliminarily approving the Settlement.

Dated: April 13, 2018          THE DION-KINDEM LAW FIRM


BY:    */S PETER R. DION-KINDEM*
           PETER R. DION-KINDEM, P.C.
           PETER R. DION-KINDEM
           Attorney for Plaintiff Jose Gonzalez