1
2
3
4
5
6
7
8                      UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE GONZALEZ, *individually and on*          Lead Case No.  1:16-cv-01891-DAD-JLT
     *behalf of all similarly situated people*,
12                                                  Member Case No.  1:17-cv-01094-DAD-JLT
                    Plaintiff,
13
          v.
14                                                  ORDER GRANTING PRELIMINARY
     CORECIVIC OF TENNESSEE, LLC and                APPROVAL OF CLASS ACTION
15   CORECIVIC, INC.,                               SETTLEMENT

16                  Defendants.                     (Doc. No. 59)

17

18   THOMAS RICHARDS, *individually and*
     *on behalf of all similarly situated people*,
19
                    Plaintiff,
20
          v.
21
     CORECIVIC OF TENNESSEE, LLC,
22
                    Defendant.
23

24                              **INTRODUCTION**

25        This matter came before the court on August 6, 2019, for hearing on plaintiff Jose

26   Gonzalez's second unopposed motion for preliminary approval of a class action settlement.  (Doc.

27   No. 59.)  Attorneys Peter Dion-Kindem and Lonnie Blanchard appeared telephonically on behalf

28   of plaintiffs and the putative class, and attorney Paul Gleason appeared telephonically on behalf

                                            1

of defendants.  For the reasons set forth below, the court will grant preliminary approval of the proposed class action settlement.

**BACKGROUND**

Defendants CoreCivic, Inc. and CoreCivic of Tennessee, LLC (collectively, the "defendants") operate correctional facilities in California where plaintiffs Jose Gonzalez and Thomas Richards (collectively, the "plaintiffs") were employed as correctional officers.  (Doc. No. 1 at 19); *see also Richards v. CoreCivic of Tennessee, LLC*, No. 1:17-cv-01094-DAD-JLT (E.D. Cal. 2016) (Doc. No. 25 at 4–5] [hereinafter the "*Richards* case"].  Plaintiffs allege various wage-and-hour claims brought on behalf of correctional officers and other workers at defendants' private correctional facilities.  (*See* Doc. No. 1.)

Plaintiff Gonzalez had previously moved for preliminary approval of a settlement resolving claims brought in both this action and the *Richards* case on June 15, 2018.  (Doc. No. 40.)  The court denied preliminary approval of the proposed settlement on September 13, 2018, and advised the parties that significant changes would be necessary in order for the court to approve the settlement.  (Doc. No. 48 at 27.)

After making several revisions, plaintiff Gonzalez moved a second time for preliminary approval of the settlement on July 2, 2019.  (Doc. No. 59.)  At the August 6, 2019 hearing on the pending motion, the court identified several issues with the settlement and directed the parties to make the following changes to facilitate its approval:  1) consolidate the *Richards* case with this action; 2) dismiss the Private Attorneys General Act ("PAGA") claim in the *Richards* case; 3) have plaintiff Richards join the pending motion; and 4) amend the proposed Class Notice to accurately reflect the undersigned's name.  (Doc. No. 62.)  The parties duly complied with the court's instructions.  (*See* Doc. Nos. 63–67.)  This action now proceeds as the lead case, with plaintiff Richards joining plaintiff Gonzalez's pending motion for preliminary approval of the settlement.  (Doc. No. 64.)

After taking the motion under submission, the court identified several additional issues regarding the settlement and, on March 3, 2020, directed the parties to file briefing in response to its inquiries.  (Doc. No. 71.)  After the parties responded on March 13, 2020, the court identified a

deficiency with the briefing and requested further documentation that same day. (Doc. Nos. 72, 73.) The parties fulfilled the court's final request immediately. (Doc. No. 74.)

## THE PROPOSED SETTLEMENT

**A.    The Settlement Class Period**

For settlement purposes, the parties agree that the relevant class period ran from October 17, 2012 to February 28, 2019. (Doc. No. 59 at 9.)

**B.    The Proposed Subclasses**

For settlement purposes, the parties agree to certification of the following subclasses:

> **Subclass 1 – Non-compliant Meal and Rest Break Claims Class**: All non-exempt employees of Defendant in California during the Class Period.

> **Subclass 2 – On Duty Meal Period Agreement Class**:  All non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility in the position of Detention Officer, Senior Detention Officer or Assistant Shift Supervisor who executed an On-Duty Meal Period Agreement.

> **Subclass 3 – Off-the-Clock Security Measures Claims Class**: All non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility, San Diego Detention Center and/or the Otay Mesa Detention Center.

(collectively, the "Class Members") (*Id.* at 10–11). Subclass 1, being "all non-exempt employees of defendants in California," is the overarching class; Subclasses 2 and 3 are subsets of Subclass 1. (Doc. No. 72 at 6.)

**C.    Summary of the Settlement Terms**

Under the proposed settlement (the "Settlement"), defendants agree to fund a non-reversionary settlement of $3,200,000 (the "Gross Settlement Fund"). (Doc. No. 59 at 9.) The Gross Settlement Fund is allocated as follows:

> **Subclass 1 – Non-compliant Meal and Rest Break Claims Class**: A gross settlement amount of $1,950,000 for all non-exempt employees of Defendant in California during the Class Period (approximately 1070 total members). Based upon the proportional relationship between this settlement fund and the gross settlement, this class will be allocated 60.9375% of the Net Settlement Fund.

3

**Subclass 2 – On Duty Meal Period Agreement Class**:  A gross settlement amount of $300,000 for all non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility in the position of Detention Officer, Senior Detention Officer or Assistant Shift Supervisor who executed an On Duty Meal Period Agreement (approximately 201 total members). Based upon the proportional relationship between this settlement fund and the gross settlement, this class will be allocated 9.375% of the Net Settlement Fund.

**Subclass 3 – Off-the-Clock Security Measures Claims Class**: All non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility, San Diego Detention Center and/or the Otay Mesa Detention Center.  A gross settlement amount of $950,000 for approximately 686 total members.  This class will be allocated about 30% of the Net Settlement Fund.

(*Id.* at 11.)  The following will be deducted from the Gross Settlement Fund:  1) settlement administration costs not to exceed $15,500 (Doc. No. 72 at 27); 2) attorneys' fees of one-third of the Gross Settlement Fund, or $1,066,667 (Doc. No. 59 at 10); 3) attorneys' costs not to exceed $40,000 (*id.*); and 4) incentive awards of $15,000 to plaintiff Jose Gonzalez and $10,000 to Thomas Richards.  (*Id.*)  Assuming those allocations are made in full, the remaining amount (the "Net Settlement Fund"), worth $2,052,833, will be available for distribution to the Settlement Class Members on a non-claims and non-reversionary basis.  (*Id.* at 21; Doc. No. 72 at 12.)

Individual payments to each class member will be determined as follows:

Individual Settlement Payments of class members will be calculated and apportioned from the Net Settlement Fund based on the Gross Earnings of each Participating Settlement Class Member during the Settlement Class Period.  The Gross Earnings for each member of the Settlement Class during the Settlement Class Period will be known as the Individual Settlement Class Member Payroll.  The total gross payroll for each Settlement Subclass shall be calculated by adding together the Individual Settlement Class Member Payroll for all members of the Settlement Subclass.  This total sum will be known as Total Settlement Subclass Payroll.  The Settlement Administrator shall then divide each Settlement Subclass member's Individual Settlement Class Member Payroll by the applicable Total Settlement Subclass Payroll.  This calculation will result in a percentage figure for each member of the Settlement Class (the "Percentage Figure").  A Participating Settlement Class Member's share of the Net Settlement Fund will be calculated by multiplying the Participating Settlement Class Member's Percentage Figure by the portion of the Net Settlement Fund allocated to the applicable Settlement Subclass.

(Doc. No. 59 at 11–12.)  The effect of these terms is that Class Members will receive payments

from the Net Settlement Fund that reflect their individual earnings, time worked, and the subclass(es) to which they belong. (*See id.*) The estimated payouts for each subclass are as follows:

> **Subclass 1:** The simple numerical average payment from the 60.9375% of the Net Settlement Fund for this Subclass is $1,150.76 per class member. (Net Settlement Fund of $2,050,833 multiplied by 60.9375%) divided by 1070 class members = $1,167.97 per class member.)

> **Subclass 2:** The simple numerical average payment from the 9.375% of the Net Settlement Fund for this Subclass is $956.55 per class member. (Net Settlement Fund of $2,050.833 multiplied by 9.375%) divided by 201 class members = $956.55 per class member.)

> **Subclass 3:** The simple numerical average payment from the 29.6875% of the Net Settlement Fund for this Subclass is $887.52 per class member. (Net Settlement Fund of $2,050.833 multiplied by 29.6875%) divided by 686 class members = $887.52 per class member.)

(*Id.* at 21–22.)

## LEGAL STANDARDS

### A.    Rule 23 Settlements

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." The following procedures apply to the court's review of the proposed settlement:

> The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

> If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

> The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

> . . .

> Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.

*Id.*

/////

5

"Courts have long recognized that settlement class actions present unique due process concerns for absent class members." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (internal quotation marks and citations omitted). To protect the rights of absent class members, Rule 23(e) requires that the court approve all class action settlements "only after a fairness hearing and a determination that the settlement is fair, reasonable, and adequate." *Bluetooth*, 654 F.3d at 946. But when parties seek approval of a settlement agreement negotiated before formal class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement." *Id.* In such circumstances, "settlement approval requires a higher standard of fairness" and a "more exacting review" so as "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal quotation marks and citations omitted).

In addition, when parties seek class certification only for purposes of settlement, Rule 23 "demand[s] undiluted, even heightened, attention" to the certification requirements. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The district court must examine the propriety of certification under Rule 23 both at this preliminary stage and at a later fairness hearing. *See, e.g.*, *Ogbuehi v. Comcast*, 303 F.R.D. 337, 344 (E.D. Cal. Oct. 2, 2014).

Review of a proposed class action settlement ordinarily proceeds in three stages. *See Manual for Complex Litigation* (4th) § 21.632. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *Id.* (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.*; *see also Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010).

Though Rule 23 does not explicitly provide for such a procedure, federal courts generally grant preliminary approval if "the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Lounibos v. Keypoint Gov't Sols. Inc.*, No. 12-cv-00636-JST, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *see also Newberg on Class Actions* § 13:13 (5th ed. 2011). While it is not a court's province to "reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute," a court should weigh, among other factors, the strength of a plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the extent of discovery completed; and the value of the settlement offer. *Chem. Bank v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (citation omitted).

## LEGAL ANALYSIS

### A.  Preliminary Class Certification

The class action is a procedural mechanism whereby the "usual rule that litigation be conducted by and on behalf of the named parties only" is swept aside so that multiple parties— unwieldy in number but possessing similar or identical claims—may pursue common redress in an efficient and economical manner. *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted).  The parties seek preliminary certification of the proposed class under Rule 23 of the Federal Rules of Civil Procedure, which controls class certification and imposes a two-step process in deciding whether a class may be certified.

First, Rule 23(a) requires the moving party to demonstrate the existence of four prerequisites:  1) numerosity, 2) commonality, 3) typicality, and 4) adequacy.  *See Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003); *see also Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).  If, and only if, a putative class satisfies these four requirements may it then proceed to show it also satisfies one of the three subsections of Rule 23(b).  The party seeking class certification bears the burden of establishing conformity with these requirements and must do so by producing facts "affirmatively demonstrat[ing]" that certification is warranted.  *Comcast*, 569 U.S. at 33.  Only after conducting a "rigorous analysis" of these facts and determining they show "actual, [and] not presumed, conformance" with Rule

23(a) and (b) may a district court certify a class. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (citation omitted); *Patel v. Nike Retail Servs., Inc.*, Case No. 14-cv-4781-RS, 2016 WL 1241777, at *3 (N.D. Cal. Mar. 29, 2016) ("This 'rigorous' analysis applies both to Rule 23(a) and Rule 23(b)."). If a court decides to certify a class, it must define the class claims and issues and appoint class counsel. Fed. R. Civ. P. 23(c)(1), (g).

### 1. Rule 23(a) Requirements

#### a. *Numerosity*

A proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement demands "examination of the specific facts of each case and imposes no absolute limitations." *Gen. Tel. Co. of Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980). Courts have found the requirement satisfied when the class comprises as few as thirty-nine members or where joining all class members would serve only to impose financial burdens and clog the court's docket. *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 474 (E.D. Cal. 2010) (citation omitted) (discussing Ninth Circuit thresholds for numerosity); *In re Itel Securities Litig.*, 89 F.R.D. 104, 112 (N.D. Cal. 1981).

Here, plaintiffs estimate that there are approximately 1,070 members in Subclass 1, the overarching subclass; 201 members in Subclass 2; and 686 members in Subclass 3. (Doc. No. 59-1 ("Dion-Kindem Decl.") at ¶ 43.) This showing is adequate to meet the numerosity requirements of Rule 23(a)(1). *See Murillo*, 266 F.R.D. at 474

#### b. *Commonality*

Rule 23(a) also requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To satisfy the commonality requirement, the class representatives must demonstrate that common points of facts and law will drive or resolve the litigation. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." (internal quotation marks and citations omitted)).

/////

"[C]ommonality requires that the class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke," and the "plaintiff must demonstrate the capacity of classwide proceedings to generate common answers to common questions of law or fact that are apt to drive the resolution of the litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (internal quotation marks and citations omitted); *Parsons v. Ryan*, 754 F.3d 657, 684 (9th Cir. 2014) (finding commonality satisfied where "[t]he factual and legal questions that [plaintiffs] present can be answered "yes" or "no" in one stroke as to the entire class, dissimilarities among class members do not impede the generation of common answers to those questions, and the capacity of classwide proceedings to drive the resolution of this litigation cannot be doubted."); *see also Franco v. Ruiz Food Prods., Inc.*, No. cv 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) ("[C]ommonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'") (citation omitted). The rule does not require all questions of law or fact to be common to every single class member. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998), *overruled on other grounds by Wal-Mart*, 564 U.S. 338 (noting that commonality can be found through "[t]he existence of shared legal issues with divergent factual predicates"). However, the raising of merely any common question does not suffice. *See Wal-Mart*, 564 U.S. at 349 ("Any competently crafted class complaint literally raises common 'questions.'") (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. REV. 97, 131–32 (2009)).

Plaintiffs contend that the common questions of law and fact present in this case include:

> Whether Defendant's on-duty meal period agreement is lawful.
>
> Whether Class Members were provided with legally compliant meal periods.
>
> Whether Class Members were provided with legally compliant rest periods.
>
> Whether the time spent by Class Members going through Defendant's pre-shift and post-shift security procedures constitute "hours worked" under California law.

(Doc. No. 59 at 13.)  Plaintiffs have filed a supporting declaration to establish commonality.
Plaintiff Gonzalez, a correctional officer who "rotated through . . . most, if not all, of the posts"
during his employment at defendants' facility in California City, declares that he had to sign an
"Employee Volunteer Waiver for Meal Periods and that it was CoreCivic's policy that all
correctional officers sign this document."  (Doc. No. 59-3 ("Gonzalez Decl.") at ¶¶ 3–4.)  He
further states that he "was not provided with duty-free meal periods for every shift [] worked" and
estimates that "during almost all of [his] shifts, [he] had to work through [his] meal period
pursuant to the on-duty meal period agreement."  (*Id.* at ¶ 5.)  He also declares that he "never saw
or heard of any other correctional officers taking duty-free meal or rest breaks or being relieved
from duty during meal or rest breaks," and was never paid "any meal or rest period premium
payments," even though he had to work through his meal and rest breaks.  (*Id.* at ¶ 12, 14.)  The
Gonzalez declaration also includes a detailed description of the pre- and post-shift security
procedures that correctional officers had to comply with as they entered and exited defendants'
facility in California City.  (*Id.* at ¶¶ 16–27.)  This process took approximately 20–25 minutes
each day, and plaintiffs were not allowed to clock in or out until they had completed the security
procedures, meaning they were never paid for the time spent completing these mandatory
procedures.  (*Id.* at ¶¶ 22–24.)  All the Class Members were allegedly subject to the same meal
period waiver agreement, deprived of legally compliant meal and rest periods, and/or not paid for
the time spent undergoing mandatory security procedures before and after their shift.  (*See, e.g.*,
Doc. No. 59-4 ("Richards Decl.") at ¶ 5 (declaring that he had not been provided with "proper
meal and rest breaks" and had suffered "potential wage and hour violations that occurred related
to [his] employment").)

Because the above allegations "would form the basis of each of the plaintiff's claims," the
court finds that the commonality requirement is satisfied here.  *See Bykov v. DC Transportation
Servs.*, Inc., No. 2:18-cv-1691 DB, 2019 WL 1430984, at *3 (E.D. Cal. Mar. 29, 2019) (citing
*Murillo*, 266 F.R.D. at 475).

/////

/////

c.     *Typicality*

"The typicality requirement looks to whether the claims of the class representatives are typical of those of the class and is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citations and internal quotation marks omitted); Fed. R. Civ. P. 23(a)(3). While representative claims must be "reasonably co-extensive with those of absent class members," they "need not be substantially identical." *Hanlon*, 150 F.3d at 1020; *see also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

According to plaintiff Gonzalez, his "claims are like those of other Class Members and involve the same issues." (Gonzalez Decl. at ¶ 29.) As noted above, he affirms that he: 1) worked for defendants as an hourly, non-exempt correctional officer at their facility in California City and rotated through a number of posts during his tenure; 2) signed a meal period waiver agreement; 3) never took any duty-free meal or rest breaks; 4) never received any premium pay for working through his breaks; 5) complied with mandatory pre- and post-shift security procedures; and 6) was never paid for the time spent completing said procedures. (*Id.* at ¶¶ 1–27.) Similarly, plaintiff Richards avers that he: 1) worked for defendants as an hourly, non-exempt correctional officer in California; 2) was not provided with proper meal and rest breaks; and 3) experienced other wage and hour violations. (Richards Decl. at ¶¶ 4–5.)

Because the proposed subclasses consist of hourly non-exempt correctional officers who were employed by defendants in California and were allegedly subjected to the common, uniform, and systematic set of practices described above, the court finds that the claims of plaintiffs Gonzalez and Richards are "reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. The typicality requirement is therefore satisfied here as well.

d.     *Adequacy of Representation*

The final Rule 23(a) prerequisite is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Resolution of this issue

requires the court to address the following questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1651 (2019) (citation omitted); *see also Pierce v. Cty. of Orange*, 526 F.3d 1190, 1202 (9th Cir. 2008). "Adequacy of representation also depends on the qualifications of counsel." *Sali*, 909 F.3d at 1007 (citation omitted).

Both plaintiffs Gonzalez and Richards have declared that they understand their role and responsibilities as class representatives, will continue to represent the interests of all members of the proposed subclasses and actively participate in the litigation of this case, and have no interests inconsistent with those of any other class members. (Gonzalez Decl. at ¶¶ 28–34; Richards Decl. at ¶ 6–7.)

Plaintiffs' counsel have also submitted declarations to establish their adequacy as class counsel. Attorneys Peter R. Dion-Kindem and Lonnie Blanchard III each have 40 years of experience as civil litigators with focuses on commercial and employment litigation, including wage and hour cases. (Dion-Kindem Decl. at ¶ 5; Doc. No. 59-2 ("Blanchard Decl.") at ¶ 4.) Attorney Adrian R. Bacon has been licensed to practice since 2011 and, as partner and head of litigation at the Law Offices of Todd M. Friedman, has overseen or litigated as lead or co-lead counsel most of the many wage-and-hour and class action cases handled by his firm. (*See* Doc. No. 72-3 ("Supp. Bacon Decl.") at ¶¶ 3–12.) The above attorneys also: 1) declare that they do not have any conflicts with the classes or class members; 2) affirm that they have litigated dozens of similar cases, including wage-and-hour class actions, many of which resulted in settlements; and 3) resolve to prosecute the action vigorously on behalf of the class. (*See* Dion-Kindem Decl. at ¶¶ 8–10, 13; Blanchard Decl. at ¶¶ 5–6, 9; Supp. Bacon Decl. at ¶¶ 8–11; Doc. No. 74 ("Third Bacon Decl.") at ¶ 3.) As such, the court finds that plaintiffs and their counsel satisfy the adequacy of representation requirement.

/////

/////

2.     Rule 23(b)(3) Requirements

The parties seek class certification under Rule 23(b)(3), which requires: 1) that the questions of law or fact common to class members predominate over any questions affecting only individual members; and 2) that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Amchem*, 521 U.S. at 615; *In re Hyundai and Kia Fuel Economy Litigation*, 926 F.3d 539, 556 (9th Cir. 2019) (*en banc*). The test of Rule 23(b)(3) is "far more demanding" than that of Rule 23(a). *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting *Amchem*, 521 U.S. at 623–24).

a.     *Predominance*

First, common questions must "predominate" over any individual questions. While this requirement is similar to the Rule 23(a)(2) commonality requirement, the standard is higher at this stage of analysis. *Dukes*, 564 U.S. at 359. While Rule 23(a)(2) can be satisfied by even a single question, Rule 23(b)(3) requires convincing proof that common questions "predominate." *Amchem*, 521 U.S. at 623–24. "When common questions present a significant aspect of the case and can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

As discussed above, plaintiffs challenge defendants' employment policies, which have allegedly deprived Class Members of compensation for hours worked and statutorily required meal and rest periods. (Doc. No. 59 at 13.) Plaintiffs have alleged that, as a matter of policy or practice, all Class Members were subject to the same meal period waiver agreement, deprived of legally compliant meal and rest periods, and/or not paid for the time spent undergoing mandatory security procedures before and after their shift. (*See* Gonzalez Decl.; Richards Decl.) It is thus apparent that common issues of whether Class Members were paid for hours worked and received legally compliant meal and rest breaks predominate in this case. Because class actions in which a defendant's uniform policies are challenged generally satisfy the predominance requirement of Rule 23(b)(3), the court concludes that the predominance requirement has been met. *See Palacios v. Penny Newman Grain, Inc.*, No. 1:14-cv-01804-KJM, 2015 WL 4078135, at *5–6

(E.D. Cal. July 6, 2015); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, No. cv-10-3873-JST RZX, 2011 WL 320998, at *7 (C.D. Cal. Jan. 27, 2011).

b. *Superiority*

Rule 23(b)(3) also requires a court to find that "a class action is superior to other available methods for the fair adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To resolve the Rule 23(b)(3) superiority inquiry, "the court should consider class members' interests in pursuing separate actions individually, any litigation already in progress involving the same controversy, the desirability of concentrating in one forum, and potential difficulties in managing the class action—although the last two considerations are not relevant in the settlement context." *See Palacios*, 2015 WL 4078135, at *6 (citing *Schiller v. David's Bridal Inc.*, No. 10-cv-0616-AWI-SKO, 2012 WL 2117001, at *10 (E.D. Cal. June 11, 2012)).

Here, plaintiff asserts that the superiority requirement is satisfied because the alternative method of resolution—individual claims by over 1,000 Class Members who are "hourly employees with relatively modest individual claims and limited resources"—would be prohibitively expensive and uneconomical for potential plaintiffs. (Doc. No. 59 at 19.) In addition, litigating such claims individually in the highly impacted U.S. District Court for the Eastern District of California "would be inefficient and would unnecessarily burden the judicial system," *Cortez v. Vieira Custom Chopping, Inc.*, No. 1:17-cv-01647-DAD-SKO, 2019 WL 4596782, at *6 (E.D. Cal. Sept. 23, 2019), and could result in inconsistent outcomes. Given that "[a] common nucleus of facts and potential legal remedies" predominate, the court finds that these questions can be resolved for all members more efficiently and expeditiously in a single action. *Hanlon*, 150 F.3d at 1022. Therefore, the court is also satisfied that the superiority requirement has been met.

**B.  Preliminary Fairness Determination**

Plaintiffs also seek preliminary approval of the Settlement. Under Rule 23(e), a court may approve a class action settlement only if the settlement is a fair, reasonable, and adequate resolution of a bona fide dispute. *Bluetooth*, 654 F.3d at 946. "[P]reliminary approval of a settlement has both a procedural and substantive component." *Tableware Antitrust Litig.*, 484 F.

14

Supp. 2d at 1079 (citation omitted).  In particular, preliminary approval of a settlement and notice to the proposed class is appropriate if:  1) the proposed settlement appears to be the product of serious, informed, non-collusive negotiations; and 2) the settlement falls within the range of possible approval, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the class.  *Id.*

### 1.  Procedural Fairness

The court must first consider whether the process by which the parties arrived at the Settlement is the product of arm's length bargaining, rather than collusion or fraud.  *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).  A settlement is presumed fair if it "follow[s] sufficient discovery and genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012) (citation omitted).  In addition, participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Palacios*, 2015 WL 4078135, at *8 (citation omitted).

The parties previously engaged in a mediation on December 11, 2017.  (*See* Doc. No. 30-4 at 6.)  Although that mediation did not immediately result in a settlement, the parties eventually reached a proposed settlement in subsequent private negotiations.  (*See* Doc. Nos. 28 at 2; 30-5 at 6.)  After the court denied preliminary approval of that proposed settlement on September 13, 2018 (*see* Doc. No. 48), the parties, including those in a related and the PAGA action then-pending in the San Diego County Superior Court,[1] engaged in a second full day of mediation. (Dion-Kindem Decl. at ¶ 16; Doc. No. 72 at 11–12.).  Altogether, three different plaintiffs' law firms, including one that was in a "fundamentally adverse position to the plaintiffs in the case," participated in the second mediation, resulting in a negotiation that plaintiffs' counsel describe as "unquestionably arms-length, hard fought and not simple." (Doc. No. 72 at 11.)  According to the parties, it was the efforts of plaintiffs' counsel that "forced the Defendant to the upper edge of what it wanted to settle for" (*id.*), and, in fact, led defendants to increase its settlement offer by $500,000.  (*See* Doc. No. 59 at 7.)

/////

---

[1]  That action was recently settled for $550,000.  (*See* Doc. No. 72 at 18–19.)

Based on these representations by the parties' counsel, the court concludes that the Settlement in this action was the product of genuine, good faith, arms-length negotiations.

### 2. Substantive Fairness

#### a. *Adequacy of the Settlement Amount*

To evaluate the fairness of the settlement award, the court should "compare the terms of the compromise with the likely rewards of litigation." *Campbell v. Facebook, Inc.*, No. 17-16873, 2020 WL 1023350, at *12 (9th Cir. Mar. 3, 2020) (citation omitted). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) (citation omitted). To determine whether a settlement "falls within the range of possible approval," a court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

Here, the parties have agreed to $3,200,000 Gross Settlement Fund. (Doc. No. 59 at 9.) From that, the following will be deducted: 1) settlement administration costs not to exceed $15,500 (Doc. No. 72 at 27); 2) attorneys' fees of one-third of the Gross Settlement Fund, or $1,066,667 (Doc. No. 59 at 10); 3) Settlement Class Counsel Costs not to exceed $40,000 (*id.*); and 4) incentive awards of $15,000 to plaintiff Jose Gonzalez and $10,000 to plaintiff Thomas Richards. (*Id.*). Assuming these allocations are made in full, the court calculates that $2,052,833 will be available for distribution to the Settlement Class Members on a non-claims and non-reversionary basis. (*Id.* at 21; Doc. No. 72 at 12.)

Plaintiffs estimate that the maximum potential damages which could be recovered on their claims are approximately $17,078,000,[2] meaning the $3,200,000 Gross Settlement Fund represents an approximately 19 percent recovery. (*See* Doc. No. 72 at 8–10.) This settlement

---

[2] Plaintiffs' expert calculated the maximum potential recovery by analyzing "the entire universe of time-keeping records for the three subclasses." (Dion-Kindem Decl. at ¶¶ 53–61.) This expert was hired after the court denied preliminary approval of the parties' previously proposed settlement to ensure "more precise calculations using the actual time data for the entire subclass populations at issue" and include the expanded class period. (*Id.* at ¶ 58.)

amount is in the range of the percentage recoveries that California district courts—including this one—have found to be reasonable.  *See, e.g.*, *Singh v. Roadrunner Intermodal Servs., LLC*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 2412325, at *7 (E.D. Cal. May 29, 2018), *modified*, No. 1:15-cv-01497-DAD-BAM, 2018 WL 4382202 (E.D. Cal. Sept. 13, 2018) (approving a settlement of about 12% of the estimated maximum damages); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (approving a settlement of about 25–35% of the estimated maximum).  Moreover, defendants here have also committed to paying the employer portion of applicable employment taxes without drawing from the settlement funds. (Doc. No. 59-1 at 30.)

The Settlement allocates funds on a *pro rata* basis based on class members' individual earnings, time worked, and the subclass(es) to which they belong.  (Doc. No. 59 at 11–12.)  On a Gross Settlement basis, each of the approximately 1,070 class members would receive an average of almost $3,000, and on a Net Settlement basis, $2,000:  members of Subclass 1 would receive an average of approximately $1,200; Subclass 2, $1,000; and Subclass 3, $900.  (Doc. No. 72 at 5–6.)

Plaintiffs contend that the 19% recovery rate is appropriate and fair in this case for several reasons.  First, plaintiffs' counsel have practiced law for almost 40 years and have substantial experience in wage-and-hour class action litigation, and based on their experience and judgment, they aver that the settlement amount is fair and reasonable—even exceptional—because of the difficulties in obtaining and maintaining class certification, particular with meal and rest break claims.  (Doc. No. 72-1 at ¶ 35.)  Second, defendants dispute the merits of plaintiffs' claims and deny the extent of their liability.  For example, defendants contend that the maximum potential recovery for Subclass 1 is $472,944, or less than 10% of the $4,965,915 claimed by plaintiffs. (Doc. No. 72 at 17.)  Indeed, plaintiffs acknowledge that their valuation of their claims may be "very generous" due to the assumption that "there was a meal and rest break violation occurring for every shift worked in which there was an unrecorded or late meal break" even though it could have been the employee's choice or fault that the break was not recorded or taken.  (Doc. No. 59 at 22.)  Third, the Settlement offers broad relief, since it "pays for missed meal and rest breaks for

all non-exempt employees of all job categories and from all facilities," despite the possibility that the "breadth of these job categories and the diversity of these job duties" could defeat attempts at class certification. (Doc. No. 72 at 15.) Finally, plaintiffs also considered "other risks, expenses, complexities, and [the] likely duration of further litigation if the case were litigated rather than settled" and concluded that a $3,200,000 settlement yielding a 19% recovery rate represents a "fair, reasonable, and exceptional settlement." (*Id.* at 18.)

While "a larger award was theoretically possible, 'the very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes.'" *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (internal citations and quotation marks omitted)). In addition, the amount that each Class Member would expect to receive under the Settlement in this case is significant for employees who earn typically earn $15–30 an hour. (Doc. No. 72 at 5.) For all of these reasons, the court will preliminarily approve the amount offered to settle this class action.

> b. *Attorneys' Fees*

When a negotiated class action settlement includes an award of attorneys' fees, the fee award must be evaluated in the overall context of the settlement. *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002). At the same time, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where, as here, fees are to be paid from a common fund, the relationship between the class members and class counsel "turns adversarial." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010) (citation omitted). As a result, the district court must assume a fiduciary role for the class members and "act with 'a jealous regard to the rights of those who are interested in the fund' in determining what a proper fee award is." *Id.* (internal quotation marks and citations removed).

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citations omitted). The district court retains discretion in

common fund cases to choose either method.  *Id.*  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion."  *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Under the percentage of the fund method, the court may award class counsel a given percentage of the common fund recovered for the class.  *Id.*  The Ninth Circuit has generally set a 25% benchmark for the award of attorneys' fees in common fund cases.  *Id.* at 1047–48; *see also Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.").  Reasons to vary the benchmark award may be found when counsel achieves exceptional results for the class, undertakes extremely risky litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis.  *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015).  An explanation is necessary when the district court departs from the 25 percent benchmark.  *Powers v. Eichen*, 229 F.3d 1249, 1256–57 (9th Cir. 2000).  Ultimately, however, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case."  *Vizcaino*, 290 F.3d at 1048.

Here, plaintiffs bring state law claims and, under California law, "[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method."  *In re Vitamin Cases*, 110 Cal. App. 4th 1041, 1053 (2003) (internal quotation marks and citations omitted).  The court determines the lodestar amount by multiplying a reasonable hourly rate by the number of hours reasonably spent litigating the case.  *See Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 (9th Cir. 2001).  The product of this computation, the "lodestar" amount, yields a presumptively reasonable fee.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  The Ninth Circuit has recommended that district courts apply one method but cross-check the appropriateness of the amount by employing the other as well.  *See Bluetooth*, 654 F.3d at 944.

/////

The Settlement before the court provides that class counsel will seek an attorneys' fees award of up to one-third of the Gross Settlement Fund, or $1,066,667. (Doc. No. 59 at 10.) This is higher than the benchmark percentage for this circuit noted above. *See Powers*, 229 F.3d at 1256–57. The court has also already expressed concerns about the size of the award due to the limited motions practice that occurred in this case and the clear sailing provision contained in the Settlement pursuant to which defendants agree not to oppose the requested attorneys' fee award. (*See* Doc. Nos. 59 at 10; 71.) However, class counsel assert that the proposed award is appropriate because they only settled after: 1) reviewing and analyzing thousands of documents and millions of lines of data; 2) moving for class certification and defending against a third-party's motion to intervene; and 3) engaging in two "hard fought mediations." (Doc. No. 72 at 19–22.) Class counsel also note that the case was taken "on a purely at-risk contingency basis" and contend that the results obtained "are high when compared with other cases." (*Id.* at 19–20.) They also report having conducted a preliminary lodestar calculation, which yielded an estimate of $1,051,700 in lodestar fees and is consistent with the percentage fee requested. (*Id.* 23–25.) Because class counsel have justified a departure from the 25% benchmark, the court is satisfied for the purposes of preliminary approval that the proposed attorneys' fee award is reasonable under the circumstances of this case. In connection with final approval, however, the court will again examine the award of attorneys' fees and conduct a careful lodestar cross-check.

          c.    *Incentive Payment*

While incentive awards are "fairly typical in class action cases," they are discretionary sums awarded by the court "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009); *Staton*, 327 F.3d at 977 ("[N]amed plaintiffs . . . are eligible for reasonable incentive payments."). Such payments are to be evaluated individually, and the court should look to factors such as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and

reasonabl[e] fear[s of] workplace retaliation." *Staton*, 327 F.3d at 977 (citation omitted).

Here, plaintiffs have requested an incentive payment of $15,000 for plaintiff Gonzalez and $10,000 for plaintiff Richards. (Doc. No. 59 at 10.) According to their counsel, both named plaintiffs cooperated fully in litigating the case, risked the loss of future employment by filing class actions against their employer, and took on significant financial risk due to the possibility they could ultimately lose the case and be forced to pay for defendants' attorneys' fees or other costs. (Doc. No. 72 at 25–26; *see also* Gonzalez Decl.; Richards Decl.)

Both sums, however, appear to the court to be somewhat disproportionate. According to the calculations provided by class counsel, Class Members would receive an average of approximately $3,000 on a Gross Settlement basis, although individual awards will vary based on class members' individual earnings, time worked, and the subclass(es) to which they belong. (Doc. No. 72 at 5–6.) The named plaintiffs would thus receive 333–500% that of the average Class Member. While this figure is not necessarily excessive, *see Aguilar v. Wawona Frozen Foods*, No. 1:15-cv-00093-DAD-EPG, 2017 WL 2214936, at *8 (E.D. Cal. May 19, 2017) (approving an incentive award of $7,500 to each class representative where average class recovery was approximately $500), plaintiffs' sizable request comes despite the limited documentation and generic descriptions provided regarding their contributions to the litigation of this matter, even after the court had requested supplemental briefing addressing this issue. (*See, e.g.*, Gonzalez Decl. (describing only generally the "many hours" that he has spent on the case); Richards Decl. (same); Doc. No. 72 at 25–26 (providing one additional page of information that was already available to the court).) Notably, defendants also committed as part of the Settlement to a clear sailing provision for the requested incentive awards in exchange for a general release of all claims by the named plaintiffs. (Doc. No. 59-1 at 33–34.)

The Ninth Circuit has repeatedly urged district courts to be "vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citing *Rodriguez*, 563 F.3d at 960 and *Staton*, 327 F.3d at 975–78). Having reviewed the proposed incentive award, the court concludes that the amounts requested appear to be potentially disproportionate given: 1) the

average award a Class Member might expect to receive; 2) the limited evidence presented detailing the named plaintiffs' contributions to the case; and 3) the clear sailing provision contained in the Settlement. Nonetheless, the court will preliminarily approve the proposed incentive awards. At the final approval stage, however, plaintiffs *must* provide clear and specific evidence demonstrating significant contributions to the litigation of this case; failure to do so will result in an appropriate reduction in the proposed incentive awards.

        d.    *Release of Claims*

As part of the Settlement, the Released Class Claims include:

> All claims and causes of action arising during the Settlement Class Period based on and/or derived from the facts, theories of liability and claims and causes of action asserted in the Actions, including claims for wages, penalties, interest, attorneys' fees, costs, restitution, and equitable or other relief based on the following: (a) claims involving any alleged failure to properly pay wages owed for all hours worked, including any claim for minimum, straight time, or overtime wages (including claims involving "off the clock" work); (b) claims involving any alleged failure to properly provide meal periods and/or to authorize and permit rest periods; (c) claims involving any alleged failure to keep accurate records or to issue proper wage statements to employees; (d) claims involving any alleged failure to timely and properly pay wages, and any claim for waiting time penalties; and (e) claims involving any alleged unfair business practices in violation of Business and Professions Code sections 17200, et seq., based upon the facts alleged in the Actions. The release excludes claims under the Labor Code Private Attorneys General Act of 2004 and the federal Fair Labor Standards Act of 1938.

(Doc. No. 59-1 at 27–28.) In addition, any Class Member may choose to be excluded from the Settlement. (*Id.* at 28–29.) All Class Member who do not opt out will be deemed to have released defendants from the abovementioned claims. (*Id.*) The court notes that the Released Class Claims were narrowed significantly following the court's rejection of the parties' previously proposed settlement, due in part to an overbroad release of claims. (*See* Doc. No. 48 at 18–23.) After reviewing the amended Released Class Claims, the court concludes that it now appropriately tracks the claims at issue in this case.

**C.    Proposed Class Notice and Administration**

For proposed settlements under Rule 23, "the court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); *see*

*also Hanlon*, 150 F.3d at 1025 ("Adequate notice is critical to court approval of a class settlement under Rule 23(e)."). For a class certified under Federal Rule of Civil Procedure 23(b)(3), the notice must contain, in plain and clear language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) the right of a class member to appear through an attorney, if desired; (5) to right to be excluded from the settlement; (6) the time and manner for requesting an exclusion; and (7) the binding effect of a class judgment on members of the class. Fed. R. Civ. P. 23(c)(2)(B).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks and citations omitted).

The Settlement provides that, within 30 calendar days of preliminary approval, defendants will send the Settlement Class List, which will contain "addresses for the Settlement Class Members, Social Security information, and pay information," to the Settlement Administrator. (Doc. No. 59-1 at 36.) The Administrator will then use the National Change of Address Database to identify any known or discoverable address changes. (*Id.*) Within 15 calendar days of receiving the Class List, the Administrator will send a Notice Packet to each of the Class Members via First-Class U.S. Mail. (*Id.*) Any Notice Packets returned as non-deliverable on or before the Response Deadline, which is 45 days after the mailing of the Notice Packets, will be sent to known forwarding addresses; otherwise, the Administrator will attempt a skip-trace or other search using the "name, address, and/or Social Security Number of the Class Member involved" and send a single re-mailing. (*Id.* at 37.) Class Members who receive a re-mailed Notice Packet will have an additional 10 calendar days after the Response Deadline to postmark a Request for Exclusion, Notice of Objection to the Settlement, or Dispute of the Gross Earnings or Individual Settlement Payment. (*Id.*)

The Class Notice (Doc. No. 63, Ex. 1 at 8–13) contained in the Notice Packet will include:

> (a) information regarding the nature of the Actions; (b) a summary of the Settlement's principal terms; (c) the Settlement Class definition; (d) the total Gross Earnings each respective Settlement

23

Class Member received working in a Covered Position during the Settlement Class Period; (e) each Settlement Class Member's estimated Individual Settlement Payment and the general formula for calculating Individual Settlement Payments; (f) the dates which comprise the Settlement Class Period; (g) instructions on how to submit Requests for Exclusion and Notices of Objection; (h) the deadlines by which the Settlement Class Member must postmark or fax Requests for Exclusions and Notices of Objection to the Settlement; (i) the claims to be released, as set forth herein; and (j) the date for the Final Approval Hearing.

(Doc. No. 59-1 at 37.) The Notice also contains instructions on how to dispute the Gross Earnings or Individual Settlement Payment amounts determined by the Administrator and states that the court will exclude from the Class any member who request exclusion, and that any judgment under the Settlement will be binding on the Class. (*See* Doc. No. 63, Ex. 1 at 8–13.)

The court finds that the notice and the manner of notice proposed by plaintiffs meet the requirements of Federal Civil Procedure Rule 23(c)(2)(B), and that the proposed mail delivery is also appropriate under these circumstances.

**D.     Settlement Administrator and Settlement Administration Costs**

The parties have agreed to retain Simpluris to administer the Settlement and request that Simpluris be appointed to serve as the Settlement Administrator. (*See* Doc. No. 59 at 9, 28–29.) After the court identified several inconsistencies regarding the estimated settlement administration costs (*see* Doc. No. 71), the parties have clarified and affirmed that they received a "not-to-exceed" bid from Simpluris for $15,500. (Doc. No. 72 at 27.) As discussed, these costs will be deducted from the settlement fund. The court notes that the budgeted claims administration costs are significantly lower than other proposed settlements submitted to this court. *See Dakota Med., Inc. v. RehabCare Grp., Inc.,* No. 1:14-cv-02081-DAD-BAM, 2017 WL 1398816, at *5 (E.D. Cal. Apr. 19, 2017) (administration costs of $94,000 for $25 million settlement); *Aguilar*, 2017 WL 117789, at *7 (administration costs of $45,000 for $4.5 million settlement); *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, No. 1:15-cv-01474-DAD-BAM, 2016 WL 7426115, at *1 (E.D. Cal. Dec. 22, 2016) (administration costs up to $20,000 for $290,000 settlement).

Accordingly, the court will appoint Simpluris as the Settlement Administrator.

24

### E. Implementation Schedule

Plaintiffs have submitted the following implementation schedule:

| Event | Date |
|---|---|
| Deadline for defendants to provide Simpluris with the Settlement Class List | Thirty (30) calendar days after entry of the Preliminary Approval Order |
| Deadline for Simpluris to send a Notice Packet to each Class Member | Fifteen (15) calendar days after receipt of the Settlement Class List |
| Deadline to file a Notice of Objection, Request for Exclusion, or a Dispute of Gross Earnings or Individual Settlement Payment | Forty-five (45) calendar days after the mailing of the Notice Packet (the "Response Deadline"), unless the 45th day falls on a Sunday or Federal Holiday, in which case the Response Deadline is extended to the next day the U.S. Postal Service is open |
| Deadline to submit a Notice of Objection, Request for Exclusion, or a Dispute of Gross Earnings or Individual Settlement Payment for re-mailed Notice Packets | Ten (10) calendar days after the re-mailing of the Notice Packet, unless the 10th day falls on a Sunday or Federal Holiday, in which case the deadline is extended to the next day the U.S. Postal Service is open |
| Deadline for Simpluris to send a cure letter to Class Members who submit a defective Request for Exclusion | Three (3) business days after receipt of a defective Request for Exclusion |
| Deadline for recipients to cash Settlement Checks | One hundred eighty (180) calendar days from the date of issuance |
| Final Approval Hearing | Approximately six (6) months after entry of the Preliminary Approval Order |

The court finds that the above schedule is appropriate and adopts it.

## CONCLUSION

Accordingly:

1.  Plaintiffs' motion for preliminary approval of class action settlement (Doc. No. 59) is granted;

2.  Plaintiffs' counsel, Peter R. Dion-Kindem, Lonnie C. Blanchard, III, and Adrian R. Bacon, are appointed as class counsel;

3.  The named plaintiffs, Jose Gonzalez and Thomas Richards, are appointed as class representatives;

/////

4.    The proposed notice and claim form are approved in accordance with Federal Rule of Civil Procedure 23;

5.    Simpluris is approved as the settlement claims administrator;

6.    The proposed settlement is approved on a preliminary basis in the manner detailed above;

7.    The hearing for final approval of the proposed settlement is set for September 28, 2020 at 1:30 p.m. before the undersigned in Courtroom 5, with the motion for final approval of class action settlement to be filed at least 28 days in advance of the final approval hearing, in accordance with Local Rule 230(b); and

8.    The settlement implementation schedule set forth above is adopted.

IT IS SO ORDERED.

Dated:   **March 26, 2020**                                _____

UNITED STATES DISTRICT JUDGE