1
2
3
4
5
6
7

8                    UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JOSE GONZALEZ, individually and on          Lead Case No.  1:16-cv-01891-DAD-JLT
     behalf of all similarly situated people,
12                                               Member Case No.  1:17-cv-01094-DAD-JLT
                      Plaintiff,
13
              v.
14                                               ORDER GRANTING FINAL APPROVAL OF
     CORECIVIC OF TENNESSEE, LLC and             CLASS ACTION SETTLEMENT AND
15   CORECIVIC, INC.,                            AWARDING ATTORNEYS' FEES, COSTS
                                                 AND INCENTIVE AWARDS
16                    Defendants.
                                                 (Doc. No. 79)
17   THOMAS RICHARDS, individually and
     on behalf of all similarly situated people,
18
                      Plaintiff,
19
              v.
20
     CORECIVIC OF TENNESSEE, LLC and
21   CORECIVIC, INC.,

22                    Defendants.

23

24          This matter came before the court on September 28, 2020 for a hearing on the unopposed

25   motion for final approval of a class action settlement and for an award of attorneys' fees, costs,

26   and incentive payments, filed on behalf of plaintiffs Jose Gonzalez and Thomas Richards

27   (collectively, "plaintiffs").  (Doc. Nos. 79, 79-1.)  Attorneys Peter Dion-Kindem, Lonnie

28   Blanchard, and Adrian Bacon appeared telephonically on behalf of plaintiffs and the putative

                                                1

class, and attorney Paul Gleason appeared telephonically on behalf of defendants.  For the reasons set forth below, the court will grant final approval of the class action settlement and will award attorneys' fees, costs, and incentive payments.

## BACKGROUND

The court previously granted preliminary approval of the settlement in this wage-and-hour class action on March 26, 2020.  (Doc. No. 75.)  Pertinent factual details may be found in that order and will not be repeated here.  Following the granting of preliminary approval, on May 12, 2020, the settlement administrator mailed the court-approved class notices to all 1,203 individuals identified as class members.  (Doc. Nos. 79 at 8; 80 at ¶¶ 5–8.)  The post office returned 121 notices to the settlement administrator as undeliverable.  (Doc. Nos. 79 at 9; 80 at ¶ 10.)  The settlement administrator performed additional address searches for those individuals and re-mailed 128 notice packets to the newly found addresses and to class members who requested that another notice packet be sent to them.  (Doc. No. 80 at ¶ 10.)  After those additional efforts, a total of thirteen notice packets were returned as undeliverable.  (*Id.*)  The deadline to request exclusion from the settlement and to object to the settlement was June 26, 2020.  (*Id.* at ¶¶ 16– 17.)  As of the filing of plaintiffs' motion for final approval on August 27, 2020, four class members have requested exclusion from the settlement and no objections have been filed.  (*Id.*)  Moreover, no class members appeared at the final approval hearing.

## FINAL CERTIFICATION OF CLASS ACTION

The court has evaluated the standards for class certification in its prior order granting preliminary approval of the settlement and has found certification warranted.  (Doc. No. 75 at 7– 14.)  The court will not repeat its prior analysis here.  Because no additional issues concerning class certification have been raised, the court finds no basis to revisit any of the analysis contained in that order.  The court finds that final class certification in this case is appropriate.  The following classes are therefore certified:

/////

/////

/////

1

2

**Subclass 1 – Non-compliant Meal and Rest Break Claims Class**: All non-exempt employees of Defendant in California during the Class Period.

3

4

5

**Subclass 2 – On Duty Meal Period Agreement Class**:  All non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility in the position of Detention Officer, Senior Detention Officer or Assistant Shift Supervisor who executed an On-Duty Meal Period Agreement.

6

7

8

**Subclass 3 – Off-the-Clock Security Measures Claims Class**: All non-exempt employees of Defendant in California during the Class Period who worked at the California City Correctional Facility, San Diego Detention Center and/or the Otay Mesa Detention Center.

9   (*Id.* at 3.)  In addition, plaintiffs Gonzalez and Richards are confirmed as class representatives.

10  (*Id.* at 25.)  Plaintiffs' counsel, Peter R. Dion-Kindem, Lonnie C. Blanchard, III, and Adrian R.

11  Bacon, are confirmed as class counsel.  (*Id.*)  Simpluris, Inc. is confirmed as the settlement

12  administrator.  (*Id.* at 26.)

13                   **FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

14          Class actions require the approval of the district court prior to settlement.  Fed. R. Civ. P.

15  23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed,

16  or compromised only with the court's approval.").  "Approval under 23(e) involves a two-step

17  process in which the Court first determines whether a proposed class action settlement deserves

18  preliminary approval and then, after notice is given to class members, whether final approval is

19  warranted."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal.

20  2004).  Rule 23 requires that:  (i) notice be sent to all class members; (ii) the court hold a hearing

21  and make a finding that the settlement is fair, reasonable, and adequate; (iii) the parties seeking

22  approval file a statement identifying the settlement agreement; and (iv) class members be given

23  an opportunity to object.  Fed. R. Civ. P. 23(e)(1)–(5).  The settlement agreement in this action

24  was previously filed on the court's docket (*see* Doc. No. 59-1 at 19, Ex. 1), and class members

25  have been given an opportunity to object thereto (*see* Doc. No. 75 at 23–24, 26).  The court now

26  turns to the adequacy of notice and its review of the settlement following the final fairness

27  hearing.

28  /////

3

1    **A.   Notice**

2         "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

3    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by*

4    *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).  "Notice is satisfactory if it 'generally

5    describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

6    investigate and to come forward and be heard.'"  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d

7    566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th

8    Cir. 1980)).  Any notice of the settlement sent to the class should alert class members of "the

9    opportunity to opt-out and individually pursue any state law remedies that might provide a better

10   opportunity for recovery."  *Hanlon*, 150 F.3d at 1025.  It is important for class notice to include

11   information concerning the attorneys' fees to be awarded from the settlement because it serves as

12   "adequate notice of class counsel's interest in the settlement."  *Staton v. Boeing Co.*, 327 F.3d

13   938, 963 n.15 (9th Cir. 2003) (quoting *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th

14   Cir. 1993)) (noting that where the notice references attorneys' fees only indirectly, "the courts

15   must be all the more vigilant in protecting the interests of class members with regard to the fee

16   award").

17        The court previously reviewed the class notice that was proposed when the parties sought

18   preliminary approval of the settlement and found the notice to be satisfactory.  (Doc. No. 75 at

19   23–24.)  As noted above, on May 12, 2020, the settlement administrator mailed the notice packet

20   to the 1,203 class members identified on the class list provided by defendants.  (Doc. Nos. 79 at

21   8; 80 at ¶¶ 5–8.)  After performing advanced address searches for the 121 class members whose

22   notice packets had been returned as undeliverable, the settlement administrator re-mailed notice

23   packets and ultimately received thirteen notice packets as undeliverable.  (Doc. Nos. 79 at 9; 80 at

24   ¶ 10.)  Accordingly, only about 1% of the class did not receive the mailed notice packets.

25        Given the above, the court concludes adequate notice was provided to the class here.  *See*

26   *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir. 1994) (courts need not ensure all class

27   members receive actual notice, only that "best practicable notice" is given); *Winans v. Emeritus*

28   *Corp.*, No. 13-cv-03962-HSG, 2016 WL 107574, at *3 (N.D. Cal. Jan. 11, 2016) ("While Rule 23

4

1    requires that 'reasonable effort' be made to reach all class members, it does not require that each

2    individual actually receive notice.").  The court accepts the reports of the settlement administrator

3    and finds that sufficient notice has been provided satisfying Rule 23(e)(1).

4    **B.      Final Fairness Hearing**

5           On September 28, 2020, the court held a final fairness hearing, at which class counsel and

6    defense counsel appeared.  No class members, objectors, or counsel representing the same

7    appeared at the hearing.  For the reasons explained below with regard to each of the settlement

8    factors, the court now determines that the settlement reached in this case is fair, adequate, and

9    reasonable.  *See* Fed. R. Civ. P. 23(e)(2).

10          At the final approval stage, the primary inquiry is whether the proposed settlement "is

11   fundamentally fair, adequate, and reasonable."  *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th

12   Cir. 2012); *Hanlon*, 150 F.3d at 1026.  "It is the settlement taken as a whole, rather than the

13   individual component parts, that must be examined for overall fairness."  *Hanlon*, 150 F.3d at

14   1026 (citing *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 628 (9th Cir.

15   1982)); *see also Lane*, 696 F.3d at 818–19.  Having already completed a preliminary examination

16   of the agreement, the court reviews it again, mindful that the law favors the compromise and

17   settlement of class action suits.  *See, e.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th

18   Cir. 2008); *Churchill Vill., L.L.C.*, 361 F.3d at 576; *Class Plaintiffs v. City of Seattle*, 955 F.2d

19   1268, 1276 (9th Cir. 1992); *Officers for Justice*, 688 F.2d at 625.  Ultimately, "the decision to

20   approve or reject a settlement is committed to the sound discretion of the trial judge because he

21   [or she] is exposed to the litigants and their strategies, positions, and proof."  *Staton*, 327 F.3d at

22   953 (quoting *Hanlon*, 150 F.3d at 1026).

23          In assessing the fairness of a class action settlement, courts balance the following factors:

24              (1) the strength of the plaintiffs' case; (2) the risk, expense,
                complexity, and likely duration of further litigation; (3) the risk of
25              maintaining class action status throughout the trial; (4) the amount
                offered in settlement; (5) the extent of discovery completed and the
26              stage of the proceedings; (6) the experience and views of counsel;
                (7) the presence of a governmental participant; and (8) the reaction
27              of the class members to the proposed settlement.

28   *Churchill Vill., L.L.C.*, 361 F.3d at 575; *see also In re Online DVD-Rental Antitrust Litig.*, 779

5

1  F.3d 934, 944 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 964–67 (9th Cir.

2  2009).  These settlement factors are non-exclusive, and each need not be discussed if they are

3  irrelevant to a particular case.  *Churchill Vill., L.L.C.*, 361 F.3d at 576 n.7.

4         Where the parties have reached a settlement agreement prior to class certification, the

5  court has an independent duty on behalf of absent class members to be vigilant for any sign of

6  collusion among the negotiating parties.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654

7  F.3d 935, 946 (9th Cir. 2011) (noting "settlement class actions present unique due process

8  concerns for absent class members" because the "inherent risk is that class counsel may collude

9  with the defendants, 'tacitly reducing the overall settlement in return for a higher attorney's fee'")

10  (citations omitted).  In particular, where a class action settlement agreement is reached prior to a

11  class being certified by the court, "consideration of these eight *Churchill* factors alone is not

12  enough to survive appellate review."  *Id.* at 946–47.  District courts must be watchful "not only

13  for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of

14  their own self-interests and that of certain class members to infect the negotiations."  *Id.* at 947.

15  These more subtle signs include:  (i) "when counsel receive a disproportionate distribution of the

16  settlement, or when the class receives no monetary distribution but class counsel are amply

17  rewarded"; (ii) the existence of a "clear sailing" arrangement, which provides "for the payment of

18  attorneys' fees separate and apart from class funds," and therefore carries "the potential of

19  enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel

20  accepting an unfair settlement on behalf of the class"; and (iii) "when the parties arrange for fees

21  not awarded to revert to defendants rather than be added to the class fund."  *Id.* (internal

22  quotations and citations omitted).  The Ninth Circuit has also recognized that a version of a "clear

23  sailing" arrangement exists when a defendant expressly agrees not to oppose an award of

24  attorneys' fees up to an agreed upon amount.  *Lane*, 696 F.3d at 832; *In re Bluetooth*, 654 F.3d at

25  947; *In re Toys R Us-Delaware, Inc.–Fair and Accurate Credit Transactions Act (FACTA) Litig.*,

26  295 F.R.D. 438, 458 (C.D. Cal. 2014) ("In general, a clear sailing agreement is one where the

27  party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so

28  /////

6

1  long as the award falls beneath a negotiated ceiling.") (quoting *Weinberger v. Great N. Nekoosa*

2  *Corp.*, 925 F.2d 518, 520 n.1 (1st Cir. 1991)).

3        While this court has wide latitude to determine whether a settlement is substantively fair,

4  it is held to a higher procedural standard and "must show it has explored comprehensively all

5  factors, and must give a reasoned response to all non-frivolous objections." *Allen v. Bedolla*, 787

6  F.3d 1218, 1223–24 (9th Cir. 2015) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir.

7  2012)).  Thus, while the court should examine any relevant *Churchill* factors, the failure to review

8  a pre-class certification settlement for those subtle signs of collusion identified above may

9  constitute error.  *Id.* at 1224–25.

10        1.    Strength of Plaintiffs' Case and Risk of Maintaining Class Action Status

11             Throughout Trial

12        When assessing the strength of a plaintiff's case, the court does not reach "any ultimate

13  conclusions regarding the contested issues of fact and law that underlie the merits of this

14  litigation." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz.

15  1989).  The court cannot reach such a conclusion because evidence has not been fully presented.

16  *Id*.  Instead, the court "evaluate[s] objectively the strengths and weaknesses inherent in the

17  litigation and the impact of those considerations on the parties' decisions to reach these

18  agreements." *Id*.

19        Here, plaintiffs "steadfastly maintain that their claim[s] [are] meritorious" and that

20  defendants violated California's labor laws by failing to pay wages, waiting time penalties, meal

21  and rest period premiums, and failing to provide itemized wage statements.  (Doc. Nos. 79 at 4, 5;

22  59 at 8.)  Defendants have "vigorously disputed [their] liability" and contend that they did not

23  violate any provisions of law.  (Doc. No. 59 at 8.)  On the merits of plaintiffs' claims, the parties

24  dispute whether the on-duty meal period agreements that class members of Subclass 2 had

25  executed were facially invalid (plaintiffs' position) or in compliance with the applicable Wage

26  Order (defendants' position), and whether the time spent by employees entering and exiting

27  through security procedures is compensable (plaintiffs' position) or is "the equivalent of non-

28  compensable commute time" (defendants' position).  (Doc. No. 59 at 25–26.)

7

Defendants also maintain that plaintiffs' claims are not subject to class certification and are inappropriate for class treatment due to variations among the work duties and demands of the various class members.  (Doc. Nos. 59 at 25, 79 at 5.)  As to Subclass 1, which includes "the entire employee population across multiple facilities," defendants assert that meal and rest break claims are difficult to certify, and the court may find individual issues predominate, such as "whether employees skipped meal breaks or 'short' meal periods resulted from the employee's individual voluntary choice."  (Doc. No. 59 at 25.)  As to Subclass 2, defendants contend that "whether employees actually took meal breaks despite the on-duty meal break agreements or skipped them voluntarily are potentially problematic certification issues that could be dependent on individualized issues."  (*Id.* at 26.)  As to Subclass 3, defendants assert "that certifying class claims across multiple facilities may not be appropriate and that the amount of time actually consumed by a particular employee is a proof problem because the time is 'off-the-clock,' not recorded and varies entrance-by-entrance and exit-by-exit."  (*Id.*)

Though plaintiffs "continue[] to believe this is a strong case for Rule 23 certification," they also "appreciate [that defendants'] defenses to certification made certification potentially problematic," and "there is always a risk and enormous expense associated with class certification proceedings."  (*Id.* at 25; Doc. No. 79 at 5.)

Therefore, it appears that while plaintiffs have potentially meritorious claims, it is far from certain that they would have prevailed on those claims, particularly on a class-wide basis.  The court finds that consideration of the first and third *Churchill* factors weigh in favor of granting final approval of the settlement in this action.

2.       Risk, Expense, Complexity, and Likely Duration of Further Litigation

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).  As a result, "[a]pproval of settlement is preferable to lengthy and expensive litigation with uncertain results."  *Johnson v. Shaffer*, No. 2:12-cv-1059-KJM-AC, 2016 WL 3027744, at *4 (E.D. Cal. May 27, 2016) (citing *Morales v. Stevco, Inc.*, No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *10

8

1  (E.D. Cal. Nov. 10, 2011)).  Employment law class actions are, by their nature, time-consuming

2  and expensive to litigate.  *Hightower v. JPMorgan Chase Bank, N.A.*, No. 11-cv-1802-PSG-PLA,

3  2015 WL 9664959, at *6 (C.D. Cal. Aug. 4, 2015).

4        Though the parties have been litigating this case for nearly four years, that timeline would

5  be extended even further by litigating this case to final resolution through a jury trial.  The

6  parties' expenses would increase as litigation costs continue to accrue, and any recovery of a

7  monetary judgment, which is not guaranteed, would be prolonged.  Indeed, the parties contend

8  that "[t]his settlement avoids the risk of non-recovery and the additional, accompanying expense

9  associated with an appeal if the case was not certified." (Doc. No. 79 at 5.)  Moreover, plaintiffs

> recognize the inherent risks and uncertainty of litigation and understand the benefits of providing significant settlement payments to the Class now as opposed to risking (i) the Court's denial of certification; and (ii) an unfavorable result on the merits on summary judgment or at trial and/or on an appeal, a process that can take several more years to litigate.

14  (Doc. No. 59 at 24.)  Thus, consideration of this factor also weighs in favor of granting final

15  approval.

16        3.    The Amount Offered in Settlement

17        To evaluate the fairness of the settlement award, the court should "compare the terms of

18  the compromise with the likely rewards of litigation."  *See Protective Comm. for Indep.*

19  *Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424–25 (1968).  "It is well-

20  settled law that a cash settlement amounting to only a fraction of the potential recovery does not

21  per se render the settlement inadequate or unfair."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d

22  454, 459 (9th Cir. 2000).  To determine whether a settlement "falls within the range of possible

23  approval" a court must focus on "substantive fairness and adequacy," and "consider plaintiffs'

24  expected recovery balanced against the value of the settlement offer."  *In re Tableware Antitrust*

25  *Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

26        Here, the parties have agreed to a non-reversionary settlement of $3,200,000 (the "gross

27  settlement fund").  (Doc. No. 59 at 21.)  The settlement agreement provides for allocation of the

28  /////

gross settlement fund as follows: (1) settlement administration costs not to exceed $16,000[1]; (2) payment for attorneys' fees in the amount of $1,066,667, which is one-third of the gross settlement fund; (3) class counsel's litigation expenses in the amount of $22,226.31[2]; (4) incentive awards of $15,000 to plaintiff Gonzalez and $10,000 to plaintiff Richards; and (5) distribution to the three subclasses in the amount of the remaining funds (the "net settlement fund"). (Doc. Nos. 75 at 3–4; 79-1 at 16; 79 at 9.) The settlement provides for distribution of the net settlement fund to be allocated on a percentage basis, with Subclass 1 receiving 60.9375 percent of the net settlement fund, Subclass 2 receiving 9.375 percent, and Subclass 3 receiving about 30 percent. (Doc. No. 59 at 11.) As detailed in this court's order granting preliminary approval of this settlement, class members will receive payments based on their individual earnings and time worked. (Doc. No. 75 at 4–5.) The parties estimate that with a net settlement fund of $2,052,333.00, Subclass 1 will receive "$1,250,225.89 with the highest estimated

---

[1] Citing to the plaintiffs' supplemental briefing in support of plaintiffs' motion for preliminary approval of the class action settlement, the court's order granting preliminary approval stated that the settlement administration costs are "not to exceed $15,500." (Doc. No. 75 at 4) (citing Doc. No. 72 at 7) ("In response to the Court's request for Plaintiffs' counsel to address the inconsistency of these bids, the currently accurate 'not to exceed' bid from the settlement administrator is $15,500.") However, in the pending motion for final approval, the amount for settlement administration expenses is listed as $16,000. (Doc. No. 79 at 9.) In addition, the separately filed declaration from the settlement administrator states that "Simpluris' total costs for services in connection with the administration of this Settlement, including fees incurred and anticipated future costs for completion of the administration, is $16,000.00, which includes all work to conclude Simpluris' duties and responsibilities pursuant to the Settlement . . .." (Doc. No. 80 at ¶ 18.) At the final approval hearing, the parties clarified that they intend for the settlement administrator to receive an allocation of $16,000 and the court will approve that amount.

[2] In support of preliminary approval, class counsel Peter R. Dion-Kindem declared that "Class Counsel will apply to the Court for an award of costs in an amount not to exceed $40,000 ("Settlement Class Counsel Costs"). Defendant will not oppose this application. The difference between this amount and the actual amount approved *shall be available for distribution to the Settlement Class Members*." (Doc. No. 59-1 at 8, ¶ 36) (emphasis added). Yet, plaintiffs' motion for final approval instead asserts that "[a]ny portion of the Class Counsel Costs that are sought but not awarded to Class Counsel *will revert to Defendant*." (Doc. Nos. 79-1 at 15; 79-2 at 10, ¶ 30.) At the final approval hearing, the parties explained that plaintiffs' reference to a reversion in their motion for final approval was included by mistake, and that the parties intend for no amounts—be it fees or costs—to revert to defendant. Rather, any unawarded amounts for fees and costs will be available for distribution to the class.

1    payment being $4,425.64 and the average estimated payment being $1,042.72," Subclass 2 will

2    receive "$192,231.98 with the highest estimated payment being $1,141.98 and the average

3    estimated payment being $160.33," and Subclass 3 will receive "$609,110.71 with the highest

4    estimated payment being $2,429.77 and the average estimated payment being $508.02." (Doc.

5    No. 79 at 9–10.)

6           The gross settlement amount of $3.2 million represents approximately 19 percent of

7    plaintiffs' maximum potential recovery on their claims, which plaintiffs estimate would be

8    approximately $17,078,000. (Doc. No. 72 at 8–10.) This estimated value of plaintiffs' claims

9    was calculated without accounting for any discounts or giving any weight to the defendants'

10   defenses to plaintiffs' claims on the merits or to class certification. (*Id.*) The court has previously

11   assessed the fairness and adequacy of the settlement amount, in light of the circumstances of this

12   case, and found that a 19% recovery rate is within the range of the percentage recoveries that

13   California district courts have found to be reasonable. (Doc. No. 75 at 16–17.) Consistent with

14   the reasons stated in the court's prior order, the court finds that the settlement amount in this case

15   is appropriate and fair. Thus, consideration of this factor also weighs in favor of final approval.

16           4.      Extent of Discovery Completed and Stage of the Proceedings

17          "In the context of class action settlement, 'formal discovery is not a necessary ticket to the

18   bargaining table' where the parties have sufficient information to make an informed decision

19   about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)

20   (quoting *In re Chicken Antitrust Litig.*, 669 F.2d 228, 241 (5th Cir. 1982)). Approval of a class

21   action settlement thus "is proper as long as discovery allowed the parties to form a clear view of

22   the strength and weaknesses of their case." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D.

23   443, 454 (E.D. Cal. 2013). A settlement is presumed fair if it "follow[s] sufficient discovery and

24   genuine arms-length negotiation." *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 977 (E.D.

25   Cal. 2012) (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D.

26   Cal. 2004)). The court must consider whether the process by which the parties arrived at their

27   settlement is truly the product of arm's length bargaining, rather than collusion or fraud. *Millan*

28   *v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 613 (E.D. Cal. 2015).

1    Here, the parties engaged in "extensive documentary discovery and Defendant provided

2    extensive payroll and time-keeping data." (Doc. No. 59 at 20.)  Based on that discovery, the

3    parties twice engaged in formal mediation efforts, both times before well-respected mediators,

4    and the second of which ultimately led to the settlement agreement now pending for final

5    approval.  (*Id.*)  As detailed in the court's order granting preliminary approval, the court is

6    satisfied that those negotiations constituted genuine and informed arm's length bargaining.  (Doc.

7    No. 75 at 15–16.)

8    Accordingly, the court concludes that consideration of this factor also weighs in favor of

9    granting final approval.

10        5.        Experience and Views of Counsel

11        Class counsel Peter R. Dion-Kindem of Peter R. Dion-Kindem, P.C., Lonnie C. Blanchard

12   III of The Blanchard Law Group, APC, and Adrian R. Bacon of The Law Offices of Todd M.

13   Friedman, P.C., filed declarations in support of plaintiffs' motion for preliminary approval,

14   detailing their extensive experience in litigating class actions and, specifically, wage-and-hour

15   class actions.  (Doc. Nos. 59-1, 59-2, 59-6.)  Based on their experience and qualifications, class

16   counsel concluded that this settlement is fair and reasonable.  Thus, consideration of class

17   counsel's experience and expressed opinions in this regard also weighs in favor of final approval

18   of the settlement.

19        6.        Presence of a Governmental Participant

20        There is no governmental participant in this action, so this factor is not at issue.

21        7.        Reaction of the Class Members to the Proposed Settlement

22        The absence of objections to a proposed class action settlement supports the conclusion

23   that the settlement is fair, reasonable, and adequate.  *See Nat'l Rural Telecomms. Coop.*, 221

24   F.R.D. at 529 ("The absence of a single objection to the Proposed Settlement provides further

25   support for final approval of the Proposed Settlement.") (citing cases); *Barcia v. Contain-A-Way,*

26   *Inc.*, No. 07-cv-938-IEG-JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009).

27        According to the declaration of Mary Butler, case manager at Simpluris, Inc., who serves

28   as the settlement administrator in this case, no member of the class has filed an objection to the

12

1    settlement pending before the court for final approval.  (Doc. No. 80 at ¶ 17.)  Similarly, no class

2    members appeared at the final fairness hearing to raise any objections to the settlement.

3    Accordingly, consideration of this factor weighs significantly in favor of granting final approval.

4            8.      Subtle Signs of Collusion

5            The court now turns to a review of whether any of the "more subtle signs" of collusion

6    recognized by the Ninth Circuit are present here.  *See In re Bluetooth*, 654 F.3d at 947.

7            First, the settlement includes a version of a "clear sailing" arrangement, in which

8    defendants agreed "not to oppose or impede any application or motion by Settlement Class

9    Counsel for attorneys' fees of not more than One-Third (1/3) of the Class Settlement Amount,

10   plus the reimbursement of costs and expenses in amount not to exceed $40,000."  (Doc. No. 59-1

11   at 33.)  Although the "very existence of a clear sailing provision increases the likelihood that class

12   counsel will have bargained away something of value to the class," *In re Bluetooth*, 654 F.3d at

13   948 (citation omitted), the existence of a clear sailing provision is not necessarily fatal to final

14   approval.  Rather, "when confronted with a clear sailing provision, the district court has a

15   heightened duty to peer into the provision and scrutinize closely the relationship between

16   attorneys' fees and benefit to the class."  *Id.* (citing *Staton*, 327 F.3d at 954).  As plaintiffs note:

17   the amount requested is lower than or close to the lodestar amount (Doc. No. 79-1 at 13–14); a

18   number of courts within the Ninth Circuit have awarded one-third of gross settlement amounts in

19   attorneys' fees, which suggests that the benchmark may be one-third, not one-quarter (*id.* at 8–9);

20   and the absence of any objections speaks to the fairness of the requested award because the class

21   notice informed class members that class counsel would seek an award of up to one-third of the

22   gross settlement amount (*id.* at 13).

23          Second, the parties did not arrange for any unawarded amount of fees to revert to

24   defendants.  According to the parties' representations in the briefing in support of preliminary

25   approval, "the difference between the requested amount [of attorneys' fees] and the actual amount

26   approved shall be available for distribution to the Settlement Class Members."  (Doc. No. 59 at

27   10) (citing Doc. No. 59-1 at 8, ¶ 35).

28   /////

                                                    13

1    Third, the court does not find that class counsel is seeking a disproportionate distribution

2    of the settlement even though the amount of attorneys' fees sought here—one-third of the

3    settlement fund—is on the high end of amounts typically awarded in the Ninth Circuit.  *See Id.*

4    (setting a 25% benchmark); *Staton,* 327 F.3d at 952 (same); *Six (6) Mexican Workers v. Ariz.*

5    *Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (same); *see also Morales v. Stevco, Inc.*,

6    No. 1:09-cv-00704-AWI-JLT, 2011 WL 5511767, at *12 (E.D. Cal. Nov. 10, 2011) ("The typical

7    range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33 1/3% of the total settlement

8    value, with 25% considered the benchmark.") (quoting *Powers v. Eichen*, 229 F.3d 1249, 1256

9    (9th Cir. 2000)).  The court is therefore satisfied that the settlement is not the product of

10   collusion.

11    In sum, the court finds on balance, and after considering all of the relevant factors, that the

12   settlement is fair, reasonable, and adequate.  *See* Fed. R. Civ. P. 23(e).

13   **ATTORNEYS' FEES, EXPENSES, AND INCENTIVE PAYMENTS**

14    In plaintiffs' motion for final approval of the class action settlement, plaintiffs also request

15   awards for class counsel's fees, litigation expenses, and incentive payments for plaintiffs.  (Doc.

16   No. 79-1.)

17   **A.      Attorneys' Fees**

18    This court has an "independent obligation to ensure that the award [of attorneys' fees],

19   like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In*

20   *re Bluetooth*, 654 F.3d at 941.  This is because, when fees are to be paid from a common fund, the

21   relationship between the class members and class counsel "turns adversarial." *In re Mercury*

22   *Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010); *In re Wash. Pub. Power Supply*

23   *Sys. Secs. Litig.*, 19 F.3d 1291, 1302 (9th Cir. 1994).  As such, the district court assumes a

24   fiduciary role for the class members in evaluating a request for an award of attorneys' fees from

25   the common fund.  *In re Mercury*, 618 F.3d at 994; *see also Rodriguez v. Disner*, 688 F.3d 645,

26   655 (9th Cir. 2012); *West Publ'g Corp.*, 563 F.3d at 968.

27    In a diversity action such as this, federal courts apply state law both to determining the

28   right to fees and the method of calculating them.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

14

1047 (9th Cir. 2002); *Mangold v. Cal. Public Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The California Supreme Court has clarified that the percentage-of-fund method of calculating attorneys' fees remains appropriate under California law. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503–06 (2016). Thus, under California law a court "may determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created." *Id.* at 503. The California Supreme Court also suggested that considerations of the risks and potential value of the litigation, the contingency, novelty, and difficulty of the litigation, the skill shown by counsel, and a lodestar cross-check are all appropriate means of discerning an appropriate percentage award in a common fund case. *Id.* at 504. Notably, while the California Supreme Court has recognized the Ninth Circuit's 25 percent benchmark for percentage awards in common fund cases, it did not adopt such a benchmark under California law. *Id.* at 495, 503–06. In common fund percentage award cases, the Ninth Circuit has similarly provided a non-exhaustive list of factors to be considered in assessing the reasonableness of the award, including:

> the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), and whether the case was handled on a contingency basis.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55 (quoting *Vizcaino*, 290 F.3d at 1047–50) (internal quotation marks omitted). The Ninth Circuit has permitted courts to award attorneys' fees using this method "in lieu of the often more time-consuming task of calculating the lodestar." *In re Bluetooth*, 654 F.3d at 942.

Here, class counsel seeks an award of attorneys' fees in the amount of $1,066,667.00, which is equal to one-third of the common fund. Although the court preliminarily approved the proposed fee award, the court expressed concerns about the above-benchmark amount that class counsel seeks particularly because there was limited motions practice in this case and the settlement agreement contained a clear sailing provision. (Doc. No. 75 at 20.) The court also indicated that it would scrutinize the requested amount and "conduct a careful lodestar cross-check" in connection with final approval. (*Id.*)

Class counsel contend that a fee award of one-third of the common fund is reasonable here for several reasons.  In their motion for final approval, plaintiffs cite to a dozen or more cases in which courts have awarded fees equal to one-third of the common fund.  (Doc. No. 79-1 at 8–9.) Plaintiffs also assert that numerous other factors support the requested award.  First, class counsel obtained a substantial recovery for the class, and "given the relatively small individual amounts at issue," this class action settlement provided for redress and recovery to the class members, for whom individual relief may not have been feasible.  (Doc. No. 79-1 at 9.)  Second, class counsel has pursued this litigation purely on a contingency-fee basis, devoting 1,319 hours and incurring out-of-pocket expenses totaling $22,226.31, "all of which they would likely not have been able to recover if this litigation had been unsuccessful."  (*Id.* at 10, 14, 16.)  Third, there were considerable risks in this litigation, particularly given the complexities and uncertainties of the law governing claims regarding meal periods, rest periods, and hours worked, and the potential that even if plaintiffs prevailed in certifying the class, there was substantial risk of decertification. (*Id.* at 11.)  Fourth, class counsel are seasoned and experienced litigators of wage-and-hour class actions, and their extensive experience enabled them "to bring this case to a favorable resolution in spite of its risks," and in the face of worthy adversaries "from an experienced labor law firm with the resources of a large corporate client at their disposal."  (*Id.* at 12.)  Finally, plaintiffs also emphasize that the lack of any objections to the settlement from class members, who were notified that class counsel would seek attorneys' fees "of not more than One-Third (1/3) of the Class Settlement Amount," speaks to the fairness of the requested fee award.  (*Id.* at 13.)  The court agrees that consideration of these factors support a finding that the requested fee award is fair and reasonable.

The court next turns to the lodestar amount, in order to cross-check the reasonableness of the requested attorneys' fee award.  Where a lodestar is merely being used as a cross-check, the court "may use a 'rough calculation of the lodestar.'"  *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662-OWW-MJS, 2011 WL 2648879, at *12 (E.D. Cal. June 30, 2011) (quoting *Fernandez v. Victoria Secret Stores, LLC*, No. 06-cv-04149-MMM-SHx, 2008 WL 8150856 (C.D. Cal. July 21, 2008)).  Moreover, beyond simply the multiplication of a reasonable hourly rate by the

16

1    number of hours worked, a lodestar multiplier is often applied.  "Multipliers in the 3–4 range are

2    common in lodestar awards for lengthy and complex class action litigation."  *Van Vranken v. Atl.*

3    *Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) (citing *Behrens v. Wometco Enters., Inc.*,

4    118 F.R.D. 534, 549 (S.D. Fla. 1988)); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (stating

5    courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even

6    higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"); *In re*

7    *Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)

8    ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the

9    lodestar method is applied.") (quoting 4 NEWBERG ON CLASS ACTIONS § 14.7).

10          Here, class counsel has submitted declarations stating the total number of hours spent by

11   their three law firms and their hourly rates.  (*See* Doc. Nos. 79-2, 79-3, 79-4.)  However, those

12   declarations do not provide full support for their purported lodestar figure.  (*See* Doc. No. 75 at

13   20) (order granting preliminary approval indicating that the court would scrutinize the requested

14   amount and "conduct a careful lodestar cross-check" in connection with final approval).  With the

15   exception of the declaration of attorney Bacon, which provides some explanation for his

16   calculation of the hours expended, and specifies which attorney spent those hours and at what

17   hourly rate (Doc. No. 79-4 at ¶ 23), class counsel's declarations do not provide a great deal of

18   assistance to the court's endeavor to perform a careful cross-check.  Attorney Dion-Kindem's

19   declaration states that he spent 545 hours on this litigation, at a billing rate of $875 per hour,

20   without a detailed description of the tasks performed, limiting somewhat the court's ability to

21   assess the reasonableness of those hours and the rates applied.  (Doc. No. 79-2 at ¶ 25.)

22   Similarly, attorney Blanchard's declaration states that "[The Blanchard Law Group, APC] office

23   has already incurred at least 602 hours in this matter," and by reference to attorney Dion-

24   Kindem's declaration, states the hourly rate for all of those 602 hours was $875.  (Doc. No. 79-3

25   at ¶ 7.)  Without specific information regarding which attorney(s) expended those hours or what

26   tasks were performed, there remains a question about whether applying the hourly rate of $875

27   for all of those hours is appropriate.  Moreover, even if attorney Blanchard expended all of those

28   hours himself, it would raise a question as to whether all of the tasks in question required such a

17

1   senior attorney's skill level, thereby justifying such a high hourly rate for the time spent

2   performing every attorney task in this litigation.  It would appear likely that at least some tasks

3   could have been performed by a junior attorney at a much lower billing rate.  Indeed, attorney

4   Bacon's declaration specifies that a junior associate expended 34.6 hours of his firm's total 172

5   hours.  (Doc. No. 79-4 at ¶ 23.)

6          In addition, most of the hourly rates requested here—$875 for attorney Dion-Kindem and

7   attorney Blanchard, $725 for managing partner Todd M. Friedman, $625 for partner Adrian

8   Bacon, and $375 for junior associate Yoel Hanohov—are higher than the rates previously

9   accepted by the undersigned as reasonable.  *See, e.g.*, *Emmons v. Quest Diagnostics Clinical

10  Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017)

11  (adopting as reasonable rates between $370 and $495 for associates and $545 and $695 for senior

12  counsel and partners).  While class counsel calculates that their lodestar is $1,104,375 based on

13  those high hourly rates, the court notes that if the previously court accepted hourly rate of $695

14  was applied to the hours expended by attorneys Dion-Kindem, Blanchard, and Friedman, the total

15  lodestar would be $897,345.[3]  To reach the amount of $1,066,667 in fees that class counsel has

16  requested here, a multiplier of approximately 1.19 would have to be applied to that lodestar.  The

17  court finds that this would be a modest and appropriate multiplier in this case.

18         Thus, whether the hourly rates employed by class counsel are applied, or if instead the

19  court calculates a lodestar based on previously accepted hourly rates and applies a modest

20  multiplier, the lodestar cross-check supports the requested award of $1,066,667 in attorneys' fees,

21  an amount equal to one-third of the total fund in this case.

22  **B.     Expenses of Class Counsel**

23         Additionally, class counsel seeks to recover the costs expended on this litigation.  Expense

24  awards "should be limited to typical out-of-pocket expenses that are charged to a fee paying client

25  and should be reasonable and necessary."  *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d

26

27  ───────────────

    [3]  The court calculated the lodestar as follows:  Friedman (19 hours * $695) + Dion-Kindem (545

28  hours * $695) + Blanchard (602 hours * $695) + Hanohov (34.6 hours * $375) + Bacon (118.4
    hours * $625) = $897,345.  (*See* Doc. Nos. 79-2, 79-3, 79-4.)

                                                18

1    1166, 1177 (S.D. Cal. 2007).  These can include reimbursements for:  "(1) meals, hotels, and

2    transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and

3    overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and

4    investigators; and (9) mediation fees."  *Id*.

5          Here, class counsel requests reimbursement of their expenses in the amount of

6    $22,226.31.  (Doc. No. 79-1 at 15.)  The court has reviewed class counsel's declarations, which

7    attest to the costs they incurred, and finds all the expenses incurred to be reasonable.

8    Accordingly, the court will approve their reimbursement of expenses in the amount requested.

9    **C.    Incentive Award**

10         "Incentive awards are fairly typical in class action cases."  *Rodriguez v. West Publ'g

11   Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  However, the decision to approve such an award is

12   a matter within the court's discretion.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th

13   Cir. 2000).  Generally speaking, incentive awards are meant to "compensate class representatives

14   for work done on behalf of the class, to make up for financial or reputational risk undertaken in

15   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

16   general."  *Rodriguez*, 563 F.3d at 958–59.  The Ninth Circuit has emphasized that "district courts

17   must be vigilant in scrutinizing all incentive awards to determine whether they destroy the

18   adequacy of the class representatives . . . .  [C]oncerns over potential conflicts may be especially

19   pressing where, as here, the proposed service fees greatly exceed the payments to absent class

20   members."  *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal

21   quotation marks and citation omitted).  A class representative must justify an incentive award

22   through "evidence demonstrating the quality of plaintiff's representative service," such as

23   "substantial efforts taken as class representative to justify the discrepancy between [her] award

24   and those of the unnamed plaintiffs."  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal.

25   2008).  Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff

26   undertakes a significant "reputational risk" by bringing suit against their former employers.

27   *Rodriguez*, 563 F.3d at 958–59.  The district court must evaluate their awards individually, using

28   "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class,

19

1   the degree to which the class has benefitted from those actions, . . . the amount of time and effort

2   the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace

3   retaliation." *Staton*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.

4   1998)).

5        Here, plaintiff Gonzalez seeks an incentive award of $15,000 and plaintiff Richards seeks

6   an incentive award of $10,000 for their services as class representatives in this action.  (Doc. No.

7   79-1 at 16.)  The court previously expressed its concerns that there was a clear sailing provision

8   in the settlement and the proposed incentive awards appear to be disproportionate to the recovery

9   by class members, even though no class members objected to the settlement with those incentive

10   awards included therein.  (Doc. No. 75 at 21–22.)  Moreover, the court pointed out that plaintiffs

11   had presented scant evidence detailing their contributions to this case to justify the requested

12   incentive awards.  (*Id.*)  In their motion for final approval of this settlement, plaintiffs assert that

13   their requested incentive award is fair and reasonable because they "spent many hours assisting

14   Class Counsel in prosecuting this case," and their "efforts included gathering documents for use

15   in this lawsuit, communicating with Class Counsel on numerous occasions, strategizing with

16   Class Counsel, and communicating with Class Counsel regarding settlement issues."  (Doc. No.

17   79-1 at 16.)  In addition, plaintiffs assert that they bore a substantial financial risk because they

18   might be "personally responsible for substantial costs if the claims did not succeed."  (*Id.* at 16–

19   17.)

20        Plaintiff Gonzalez submitted a declaration, which provides a bit more detail regarding

21   how he contributed in this case, including "obtaining legal counsel, speaking with [his] legal

22   counsel on countless occasions, . . . assisting them in gathering information, reviewing

23   documents, . . . assisting [his] lawyers in locating witnesses and talking to witnesses, giving

24   information for and reviewing damage calculations, signing documents."  (Doc. No. at 79-5 at

25   ¶ 8.)  However, plaintiff Gonzalez did not attend the mediations (though he was available to

26   communicate with his lawyers on those days) and he did not sit for deposition (though he was

27   willing to do so).  (*Id.* at ¶¶ 8–9.)  Plaintiff Gonzalez does not specify or even estimate the

28   number of hours that he spent on this litigation.  In light of these somewhat limited contributions,

1   the court is not persuaded that $15,000 is a reasonable incentive award.  Moreover, the settlement

2   administrator has declared that the average estimated payment to class members of Subclasses 1,

3   2, and 3, are $1,042.72, $160.33, and $508.02, respectively.  (Doc. No. 80 at ¶¶ 13–15.)  Thus, an

4   award of $15,000 would be over 30 times higher than the recovery of some class members.

5           Plaintiff Richards also filed a declaration in which he attests to the exact same

6   contributions as those stated in plaintiff Gonzalez's declaration.  Though plaintiff Richards seeks

7   an award of $10,000, not $15,000 like plaintiff Gonzalez, the court nevertheless finds that

8   plaintiff Richards' contributions in this case are similarly somewhat limited.  In addition, the

9   court notes that an award of $10,000 would be over 20 times higher than the recovery of some

10  class members.

11          Plaintiffs' declarations are materially identical and do not explain why plaintiff Gonzalez

12  is deserving of a higher amount for his incentive award.  At the final approval hearing, plaintiffs'

13  counsel clarified that the higher incentive award for plaintiff Gonzalez is warranted because his

14  lawsuit has been pending for a longer period of time; plaintiff Gonzalez filed his lawsuit in

15  October 2016, whereas plaintiff Richards filed his lawsuit in June 2017.  (Doc. Nos. 1, 24.)

16          Under these circumstances, the court finds that $7,500 is an appropriate amount for an

17  incentive award for plaintiff Richards, and a slightly higher in the amount of $10,000 is

18  appropriate for plaintiff Gonzalez.  *See, e.g.*, *Martin v. Sysco Corp.*, No. 1:16-cv-00990-DAD-

19  SAB, 2019 WL 6894471, at *9 (E.D. Cal. Dec. 18, 2019) (awarding $7,500 incentive payment

20  where payments to class members averaged $1,999.86); *Emmons v. Quest Diagnostics Clinical

21  Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, at *9 (E.D. Cal. Feb. 27, 2017)

22  (awarding $8,000 incentive payment where payments to class members averaged $550); *Cortez v.

23  Vieira Custom Chopping, Inc.*, No. 1:17-cv-01647-DAD-SKO, 2020 WL 4369101, at *9 (E.D.

24  Cal. July 30, 2020) (awarding $7,500 incentive payment where "[t]he average payment of class

25  members will be $2,186, although the actual amount will vary depending on each class member's

26  days and hours worked, and hourly rate of pay"); *cf. Ontiveros v. Zamora*, 303 F.R.D. 356, 366

27  (E.D. Cal. 2014) (concluding that "[i]n light of plaintiff's significant efforts, an award of $15,000

28  does not appear grossly disproportionate to the estimated average recovery of other individual

1    class members of approximately $3,700, especially given that the highest pro rata settlement

2    share is $14,358.92").

3          Accordingly, the court will award incentive payments of $10,000 for plaintiff Gonzalez

4    and $7,500 for plaintiff Richards.

5    **D.**      **Settlement Administrator Costs**

6          The court previously approved the appointment of Simpluris, Inc. as the settlement

7    administrator.  (Doc. No. 75 at 24.)  The court noted that the budgeted administration expenses of

8    $15,500 is significantly lower than administration costs found reasonable in other settlements.

9    (*Id.*)  Simpluris's case manager, Mary Butler, filed a declaration with the court indicating that its

10    total administration costs is $16,000, which includes "fees incurred and anticipated future costs

11    for completion of the administration" and "all work to conclude Simpluris' duties and

12    responsibilities pursuant to the Settlement, mailing of settlement payment checks, respond to

13    class member inquiries, and the like."  (Doc. No. 80 at ¶ 18.)

14          The court finds these costs reasonable and will direct payment in the requested amount of

15    $16,000.00 to Simpluris.

16                        **CONCLUSION**

17          For the reasons stated above:

18          1.      Plaintiffs' motion for final approval of this class action settlement (Doc. No. 79) is

19                 granted, the settlement class is certified, and the court approves the settlement as

20                 fair, reasonable, and adequate;

21               a.      The four putative class members who opted out of the settlement and the

22                     settlement class (*see* Doc. No. 80 at ¶ 16) are not bound by and are

23                     excluded from the settlement; and

24                b.      The parties are directed to effectuate all terms of the settlement agreement

25                     and any deadlines or procedures for distribution therein;

26          2.      Plaintiffs' motion for attorneys' fees and costs and incentive awards (Doc. No. 79-

27                 1) is granted, and the court awards the following sums:

28    */////*

a.  Class counsel shall receive $1,066,667.00 in attorneys' fees and $22,226.31 in expenses;

b.  Plaintiff Gonzalez shall receive $10,000.00 as an incentive payment;

c.  Plaintiff Richards shall receive $7,500.00 as an incentive payment; and

d.  Simpluris, Inc. shall receive $16,000.00 in settlement administration costs and expenses;

3.  This action is dismissed with prejudice in accordance with the terms of the settlement agreement, with the court specifically retaining jurisdiction over this action for the purpose of enforcing the parties' settlement agreement; and

4.  The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:   __**October 2, 2020**__                    ___Dale A. Drozd___

UNITED STATES DISTRICT JUDGE